PHILIP T. MESHINSKY, PLAINTIFF–RESPONDENT, v.
NICHOLS YACHT SALES, INC., AND GERALD
BERTON, DEFENDANTS–APPELLANTS.

Argued January 5, 1988—Decided June 2, 1988.

*Richard S. Zackin* argued the cause for appellant Nichols Yacht Sales, Inc. (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

*Mark D. Larner* argued the cause for appellant Gerald Berton (*Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade,* attorneys; *Mark D. Larner* and *Donald P. Jacobs,* on the briefs).

*Richard J. Grodeck* argued the cause for respondent (*Richard A. Feldman,* attorney).

The opinion of the Court was delivered by

STEIN, J.

This case primarily concerns the applicability of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to 8–20 (the "Act"), to a transaction involving the sale of a defective power boat. Plaintiff entered into an agreement to purchase a modified power boat from defendants. A defective engine prevent-

ed the boat from performing in the manner anticipated by the contract. Plaintiff rescinded the contract and commenced this action alleging breach of contract and violations of the Act for which treble damages were sought. The trial court awarded plaintiff contract damages but rejected the Consumer Fraud Act claim. The Appellate Division reversed, in part, concluding that plaintiff's damages had been proximately caused by defendants' violations of the Act. The court also held that plaintiff should have been awarded cover damages and prejudgment interest.

We reverse so much of the Appellate Division judgment as declared the Act applicable. We affirm, however, the portion of the Appellate Division's judgment awarding plaintiff "cover" damages and prejudgment interest.

I

Meshinsky, a New Jersey resident, had owned two speedboats and annually attended boat shows during the years prior to the transaction in this case. Defendant Gerald Berton is president of defendant Nichols Yacht Sales, Inc. ("Nichols"), a New York corporation wholly owned by Nichols Marina, Inc. Nichols uses the trademark "Hawk Racing Team" to publicize its business, which it describes as "exclusive distributors of high-performance boats in the New York, New Jersey, and Connecticut areas." The line of products Nichols sells includes boats manufactured by the Cigarette company and engines manufactured by Hawk Marine Power Company, a company otherwise unrelated to Nichols. Nichols also supplies the official pace boats for races sponsored by the American Power Boat Association and the National Racing Association. Defendant Berton has been an editor of *Motorboating and Sailing* magazine, and was involved in the design of the thirty-eight foot Cigarette at the center of controversy in this case.

Plaintiff met Berton in New York City at a Boat Show in January 1984. Berton introduced himself as president of the

"Hawk Racing Team," a title plaintiff was familiar with from boating magazine advertisements. Plaintiff told Berton that he was dissatisfied with the boat he then owned, a 1983 Scarab, and that he wanted to own a boat that would cruise at a speed of sixty to sixty-five miles per hour. Berton advised plaintiff to buy a boat that would reach eighty miles per hour as a maximum speed, so that the sixty to sixty-five miles per hour cruising speed could be attained without inordinate strain on the engines. Berton said that a Cigarette 38 boat, with modified and enhanced Hawk Marine Power engines, could achieve such performance. The sales price was set at $196,000. Plaintiff told Berton that he wanted some time to consider the purchase. A few days later Berton called plaintiff, who indicated he had decided to purchase the boat. Plaintiff and Berton met again at the Boat Show and reached an agreement that anticipated plaintiff taking delivery of the modified Cigarette 38 on May 1, 1984.

Plaintiff was allowed $80,000 credit on his trade-in Scarab boat and paid $11,000 cash as a down payment. The balance of the purchase price, $105,000, was secured through a bank loan. To obtain the loan, plaintiff provided Nichols with credit information and signed a retail installment agreement in blank. A bank officer gave deposition testimony that described the loan transaction as one in which the borrower applies through the dealer rather than the bank. The dealer and the borrower enter into the lending contract; the dealer then assigns the contract to the bank, and the bank forwards the funds directly to the dealer. The customer's credit standing provides the basis for the loan, and the customer's signature on the loan agreement evidences his receipt of the commodity.

Plaintiff requested that Nichols not proceed with the loan application until he had possession of the new boat. Contrary to this request, Nichols submitted the papers to the bank. The bank, unwilling to accept the trade-in boat as part of the down payment, rejected the loan application. Shortly thereafter, one of Nichols' employees forged plaintiff's signature on a second

application submitted to the same bank, which falsely represented that plaintiff had provided a cash down-payment of $80,000 and no trade-in. The bank approved this application and forwarded the funds to Nichols. Plaintiff received payment coupons from the bank before the boat was delivered.

In late May of 1984, the boat arrived at Nichols' marina in New York. Plaintiff took two test rides, one week apart, with Nichols' personnel. The boat failed to achieve eighty miles per hour on either occasion. In each instance plaintiff refused to accept the boat, and defendants attempted to make adjustments to improve the boat's performance. Following the second test run, defendants assured plaintiff that after the boat was broken in and operated for twenty-five hours, it would be able to reach eighty miles per hour. Based on this assurance, plaintiff accepted delivery of the boat.

After delivery, however, the boat's performance did not improve and mechanical defects in the engines became apparent. One of the engines burned an excessive amount of oil, a condition that resulted in severe internal damage to that engine. After repeated repair attempts and only eight hours operating time, defendants retrieved the boat and it was taken out of the water; the boat had never exceeded seventy-three miles per hour.

Throughout this period, the bank continued to demand payments on the loan from plaintiff. Plaintiff refused to make any payments and in July 1984 advised Berton that he was rescinding the contract. A TRW credit report prepared for plaintiff contained a reference to the unpaid installments. After plaintiff instituted this action, Nichols paid off the loan.

In November 1984 plaintiff purchased a slightly less powerful Cigarette 38 from a Florida distributor for a base price of $214,629.16, with additional costs for modifications to make this boat comparable to the first bringing the total expenditure to $220,200. Despite the higher price, evidence at trial established that the replacement boat had only "approximately 90%" of the

equipment and potential power of the boat purchased from Nichols.

Plaintiff instituted this action against Nichols and Berton [1] alleging breach of contract and violations of the Consumer Fraud Act. Following a non-jury trial, the trial court entered judgment for plaintiff on the contract count but rejected the Consumer Fraud Act claim. The court held that plaintiff was entitled to revoke his acceptance of the boat because defendants had failed to cure, within a reasonable period of time, a substantial defect in the boat's engines. *See N.J.S.A.* 12A:2-608. Plaintiff was awarded contract damages totalling $93,440, which represented the cash value of the traded-in Scarab ($80,-000), the cash down payment ($11,000), unreimbursed insurance premiums ($2,090), and the cost of federal documentation for the boat ($350). The trial court dismissed all other claims for damages, including prejudgment interest and cover damages, as well as all claims against defendant Berton in his individual capacity.

On the Consumer Fraud Act claim, the court found that defendants had committed no unconscionable commercial practices in attempting to sell plaintiff the boat. The court further concluded that the retail installment contract issue was a matter between the defendants and the bank, and that plaintiff had shown "no causal relationship between [the TRW] credit report and either a specific or a general loss suffered by [plaintiff]."

The Appellate Division, in an unpublished opinion, reversed those portions of the trial court ruling that found plaintiff not entitled to "cover" damages, treble damages under the Consumer Fraud Act, and prejudgment interest, as well as its holding on the individual liability of defendant Berton. The court held that plaintiff had fulfilled the requirements of *N.J. S.A.* 12A:2-712 for "cover" damages by purchasing a substitute boat in a commercially reasonable manner. The court also

---

[1] A third defendant, Alan Cohen, was dismissed from the case at trial.

concluded that because the recission damages were capable of ascertainment on the breach of the contract, prejudgment interest should have been awarded.

In addition, the court ruled that plaintiff had proved that he was damaged by defendants' violation of the Consumer Fraud Act. The court viewed defendant's use of the Hawk Racing Team logo and Berton's representing himself as president of the Hawk Racing Team and an expert on high performance boats as unconscionable commercial practices under the Act. According to the Appellate Division panel:

> The trial judge found that Berton misrepresented himself as the president of the Hawk Racing Team. Clearly, such misrepresentation and deceit constituted an unconscionable commercial practice under the Act in the context of this case. Berton intended to convey to plaintiff the impression that he possessed a high level of expertise in the area of high performance boats and that he was an authority and a representative for Hawk products. This was untrue.
>
> \* \* \* \* \* \* \* \*
>
> The fact that Yacht Sales' booth was situated at the boat show under a "Hawk" display coupled with the fact that Berton represented that he was the president of the Hawk Racing Team certainly had the potential to lead plaintiff and other potential buyers to believe that Berton either represented Hawk, or was an expert in its merchandise.

The court also held that the forgery of plaintiff's signature on the loan application and the misrepresentation concerning the downpayment constituted a violation of the Act.

On the issue of causation, the court stated that all of plaintiff's contract damages were "directly caused by the unconscionable and deceptive commercial practices of deceptive advertisements and misrepresentations which fraudulently induced plaintiff into contracting to purchase the boat." This disposition led the court to remand the case to the Law Division for the entry of judgment against defendants for (1) treble damages of $352,920, based on an award of $117,640 as compensatory damages (an increase of the trial court's judgment to include $24,200 in "cover" damages); (2) pre-judgment interest (to be awarded solely on the compensatory damages and against the corporate defendant only); and (3) reasonable counsel fees.

## II

We consider first the Appellate Division's award of damages under the Consumer Fraud Act. The Act was adopted in 1960 in response to widespread complaints about selling practices that victimized consumers, and sought to prevent deception, fraud, or falsity in connection with the sale and advertisement of merchandise. *Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* 57, 69 (1985); *Fenwick v. Kay American Jeep, Inc.*, 72 *N.J.* 372, 376 (1977). The Act targeted unlawful sales and advertising practices inducing consumers to purchase merchandise or real estate:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice * * *. [*N.J.S.A.* 56:8–2.]

To prove a violation of section 56:8–2, it is not·necessary to show actual deceit or a fraudulent act; any unconscionable commercial practice is prohibited. *Skeer v. EMK Motors, Inc.*, 187 *N.J.Super.* 465 (App.Div.1982). The phrase "unconscionable commercial practice" is not defined in the Act. Acknowledging that "unconscionability" is an "amorphous concept obviously designed to establish a broad business ethic," we have defined the term as "[t]he standard of conduct contemplat[ing] * * * good faith, honesty in fact and observance of fair dealing." *Kugler v. Romain*, 58 *N.J.* 522, 544 (1971). We anticipated that courts would "pour content" into the concept on a case-by-case basis. *Id.* at 543.

As originally enacted, the Act was exclusively enforced by the Attorney General, who was provided with broad powers to investigate, *N.J.S.A.* 56:8–3, subpoena records, *N.J.S.A.* 56:8–5, and seek injunctions prohibiting fraudulent conduct and orders of restitution to make whole any person damaged by conduct

violating the Act, *N.J.S.A.* 56:8–8.[2] In prosecuting an action under the Act, the Attorney General must prove that the Act has been violated, but does not have to prove that the victim of the fraudulent conduct had "in fact been misled, deceived or damaged thereby * * *." *N.J.S.A.* 56:8–2.

In 1971, the Legislature amended the Act to permit a private right of action through which a successful plaintiff receives treble damages, reasonable attorneys' fees, filing fees, and costs. *L.*1971, *c.* 247, § 7, codified at *N.J.S.A.* 56:8–19. In full, section 56:8–19 states:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

Significantly, the 1971 amendment imposes a standard of proof in consumer fraud actions by private plaintiffs that is higher than the standard that applies to enforcement proceedings instituted by the Attorney General. While the Attorney General does not have to prove that the victim was damaged by the unlawful conduct, *N.J.S.A.* 56:8–2, a private plaintiff must show that he or she suffered an "ascertainable loss * * * as a result of" the unlawful conduct. *See Daaleman v. Elizabethtown Gas Co.,* 77 *N.J.* 267, 271 (1978) (paraphrasing causation language of section 56:8–19 as requiring plaintiff to show he "suffers a loss due to" an unlawful practice); *Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 *N.J.Super.* 30, 33 (App.Div.1982) (plaintiff must establish "the extent of any ascertainable loss, particularly proximate to a misrepresentation or unlawful act of the defendant condemned by the [Act]").

---

[2]In 1967 the Office of Consumer Protection was established as the agency through which the Attorney General now exercises these powers and duties. *N.J.S.A.* 52:17B–5.7.

Against this background, it is clear that the facts of this case do not support a private consumer-fraud cause of action. The trial court found that defendant had committed no unconscionable commercial practices in selling the boat to plaintiff. The court viewed defendants' advertisements under the "Hawk Racing Team" title as no more than the proper use of a trademark, and observed that the plaintiff "knew the Hawk Racing Team was not associated with the engine and company by the same name." [3]

There was substantial evidence at trial that verified defendants' expertise in high-performance boating. Berton had been an editor of *Motorboating and Sailing* magazine, specializing in high-performance boats. He had also done experimental work with boats and had helped to design the Cigarette 38. Nichols both supplied and drove the pace boats in high-performance races sponsored by the American Power Boat Association and the National Racing Association. In comparison, there was scant evidence in the record suggesting that the plaintiff's decision to purchase the boat from Nichols was significantly influenced by Nichols' use of the Hawk Racing Team trademark.

Accordingly, the trial court, focusing primarily on the use of the trademark, concluded that this was not an unconscionable commercial practice, and therefore never specifically addressed the question whether Nichols' use of the trademark induced plaintiff to purchase the boat. The trial court also concluded that because the loan transaction was a matter between defendants and the bank, causing plaintiff no ascertainable loss, plaintiff had no cause of action under *N.J.S.A.* 56:8-19.

As noted, the Appellate Division read the record differently, holding that defendants' use of the Hawk Racing Team insig-

---

[3]Although the Appellate Division relied on a finding by the trial court that "Berton misrepresented himself as the president of the Hawk Racing Team," *supra* at 471, our review of the record does not disclose such a finding by the trial court.

nia, as well as Berton's representation that he was president of the Hawk Racing Team and an expert on high-performance boats, constituted unconscionable commercial practices prohibited by the Act. The Appellate Division panel determined, based on its review of the record, that plaintiff was induced to enter into the contract by defendants' misrepresentations. The court also concluded that defendants had violated the Act through the forgery and falsificiation of the loan documents, which "constituted *per se* deceptive and unconscionable commercial practices."

▮▮▮ The scope of an appellate court's review of a trial court's fact-finding is a limited one. Trial court findings are ordinarily not disturbed unless "they are so wholly unsupportable as to result in a denial of justice," and are upheld wherever they are "supported by adequate, substantial and credible evidence." *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84 (1974). We conclude that there is substantial evidence to support the trial court's implicit finding in this case that plaintiff was not induced to purchase the boat from Nichols by representations that constituted "unconscionable commercial practices" within the meaning of *N.J.S.A.* 56:8–2. Similarly, there was ample basis in the record to support the trial court's conclusion that defendants' conduct in obtaining the bank loan did not cause plaintiff any ascertainable loss.[4] Accordingly, it

---

[4]Although we concur fully with the Appellate Division's conclusion that defendant's conduct in obtaining the bank loan was an "unconscionable commercial practice," plaintiff never made a payment on the transaction, and Nichols eventually repaid the bank. Therefore, the only "ascertainable loss" plaintiff might have suffered as a result of defendant's conduct was the negative impact it may have had on his credit rating. The TRW credit report prepared for plaintiff subsequent to this transaction rated him as an unfavorable credit risk and noted his delinquency on the boat loan. Shortly thereafter, plaintiff was turned down for a $52,000 loan. The adverse credit report, however, also referred to two judgments against plaintiff, two overdue balances on department store accounts, and late payments on three other business loans. Five months later, plaintiff did succeed in obtaining the financing he

was error for the Appellate Division to have substituted its view of the record for that of the trial court on these issues.

Defendants also contend that there could be no cause of action under the Act because plaintiff's damages were not proximately caused by defendants' conduct. Defendants point out that the contract was rescinded because of a manufacturing defect in one of the engines, and there was no proof that absent this defect the boat would not have achieved the performance level represented by Berton. Similarly, defendants contend that their conduct in obtaining the bank loan did not cause plaintiff any ascertainable loss and therefore cannot constitute a basis for a claim for treble damages under the Act.

In view of our conclusion that the trial court's dismissal of the Consumer Fraud Act claim should be sustained, we need not resolve in this case the question of the Act's application to warranty-type damages sustained in a sales transaction induced by unconscionable commercial practices. In *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 *N.J.Super.* 11, 25–26 (1985), the Appellate Division held that a breach of warranty in a commercial sales transaction does not necessarily constitute a violation of the Consumer Fraud Act. We have not had occasion to consider the application of the Act and its treble damages provision to warranty-type damages where the sales transaction itself was induced by unconscionable commercial practices and a breach of warranty not directly related to such unconscionable practices occurs in the course of the sales transaction.

We hold that the Appellate Division erred in reversing the trial court's determination that plaintiff's Consumer Fraud Act claim should be dismissed.[5]

---

had sought. Therefore, plaintiff did not prove that he sustained any loss caused by defendant's conduct in obtaining the bank loan.

[5]Many of the events relating to this transaction occurred in New York. In a post-trial motion, defendant raised the choice-of-law issue, arguing that New York law should govern the consumer fraud claim. We note that under the

## III

■ The Appellate Division also reversed the trial court's disallowance of "cover" damages. We agree. The boat's contract price was $196,000, and the price of the replacement boat was $220,200, a difference of $24,200. *N.J.S.A.* 12A:2–711, in pertinent part, provides that:

(1) Where * * * the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract * * * the buyer may cancel and * * * may in addition to recovering so much of the price as has been paid

(a) "cover" and have damages under the next section as to all the goods affected * * *.

Dealing more specifically with "cover" damages, *N.J.S.A.* 12A:2–712 provides:

(1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (12A:2–715), but less expenses saved in consequence of the seller's breach.

(3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.

Official Comment 2 to section 2–712 explains that "cover" goods need not be identical to contract goods. They are required only to be "commercially useable as reasonable substitutes under the circumstances of the particular case * * *." Further, the same comment states that the requirement that the buyer "cover 'without unreasonable delay' is not intended to limit the time necessary for him to look around and decide as

New York Consumer Fraud Act, treble damages are discretionary, not mandatory, and are limited to $1,000. N.Y. Gen. Bus. Law, § 349(h) (McKinney's 1987). The trial court made no definitive ruling on the question. Defendants did not raise the issue before the Appellate Division, but argue before us that New York law should govern the transaction. In view of our ruling that the Act, by its own terms, does not apply to the facts of this case, we need not reach the choice-of-law question. Similarly, we do not address defendants' other challenges to the Act's applicability on subject matter jurisdiction, due process, and commerce clause grounds.

to how he may best effect cover. The test here is similar to that generally used in this Article as to reasonable and seasonable action." *See also* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 6–3 at 222 (1980) (buyer should not be denied cover damages "unless the seller comes forward with persuasive evidence that the buyer will reap added profits because of the superior quality of the cover merchandise").

Plaintiff's subsequent purchase met all of the Code's requirements. Four months after rescinding his contract with defendants, plaintiff bought another Cigarette 38 from a different dealer. The replacement boat, despite its higher price, was equipped with smaller engines and "approximately 90%" of the contract boat's features. If anything, the "substituted goods" here are of inferior quality. Cover damages are clearly appropriate in this case.

■■ We also agree with the Appellate Division's ruling granting prejudgment interest. Ordinarily, the trial court has the discretion to grant or deny prejudgment interest. *Fasolo v. Board of Trustees, Div. of Pensions*, 190 *N.J.Super.* 573, 585 (App.Div.1983). It is settled that prejudgment interest may be awarded on contract claims. *Bak–A–Lum Corp. v. Alcoa Bldg. Prods.*, 69 *N.J.* 123, 131 (1976). Moreover, the rule that limited prejudgment interest awards to cases where damages were liquidated or clearly ascertainable in advance has been significantly eroded. *Ellmex Constr. Co., Inc. v. Republic Ins. Co.*, 202 *N.J.Super.* 195, 210 (App.Div.1985), *certif. denied*, 103 *N.J.* 453 (1986). As the Appellate Division noted, "[o]nce the trial judge concluded that plaintiff's rescission of the contract * * * was proper * * *, the damages awarded were 'capable of ascertainment by mere computation' " (quoting *Rivers v. General Accident Group*, 192 *N.J.Super.* 355, 359 (App.Div.1983)). We are in accord with the Appellate Division's conclusion that under the circumstances the denial of prejudgment interest was an abuse of discretion.

The portions of the Appellate Division's judgment that applied the Consumer Fraud Act to the facts of this case and declared Berton to be individually liable are reversed. We affirm that part of the judgment finding plaintiff entitled to "cover" damages and prejudgment interest. The matter is remanded to the Law Division for the entry of a judgment for plaintiff consistent with this opinion.

*For affirmance in part, reversal in part and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, STEIN, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed* —None.