719 A.2d 668 (1998)
316 N.J. Super. 33
Stanley ROBERTS and Renee Roberts, Plaintiffs-Appellants,
v.
EDGAR F. COWGILL, Paul Smith and Diversified Products, Inc.[*], Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1998.
Decided November 6, 1998.
*669 Jacob & Ferrigno, Millville, for plaintiffs-appellants (Frederick A. Jacob, on the brief).
Waltman, Reilly & Rogovoy, Millville, for defendants-respondents (Ned P. Rogovoy, on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiffs appeal from the trial court's order declining to amend a judgment in favor of plaintiffs to provide for an award of treble damages and counsel fees under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -85 (the Act). We reverse.
The action stemmed from a contract for the construction of an addition to plaintiffs' home. Defendant Smith undertook to perform the work on behalf of his employer, Diversified Services, a family-owned business of defendant Cowgill. Plaintiffs sued, alleging common law fraud, breach of contract, negligence and violation of the Consumer Fraud Act. After a bench trial, the judge, in an oral decision, found that, by reason of some inferior work, defendants had breached the contract. With allowances for certain credits, $1,625 in net damages was awarded to plaintiffs.
With regard to the consumer fraud claim, the trial judge specifically found that defendants had engaged in no affirmative acts or knowing omissions that would constitute consumer fraud, see Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-21, 647 A.2d 454 (1994), and that the poor quality of the work performed did not alone amount to a consumer fraud, id. at 19, 647 A.2d 454 ("sloppy workmanship falls short of an unconscionable commercial practice"). The judge also found, however, that defendants had violated regulations promulgated pursuant to the Act, thereby, as a matter of law, having committed consumer fraud, id. at 17, 647 A.2d 454, a strict liability infraction. See Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 371 A.2d 13 (1977). Nevertheless, although the judge also found the same $1,625 to be the ascertainable damages under the Act, see Cox, supra, 138 N.J. at 21-24, 647 A.2d 454, he declined to treble the award because he held that the ascertainable loss was not the result of the consumer fraud, i.e., the regulatory violations. The trial judge also held "if treble damages don't flow then attorneys' fees can't flow."
Because there is "adequate, substantial and credible evidence" supporting the trial judge's findings and conclusions that defendants had committed no affirmative acts or knowing omissions which would constitute violations of the Act, we are obliged to defer to them. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Likewise, the findings that defendants violated some regulations adopted under the Act governing home improvement practices are unassailable. The question *670 whether the regulatory violations subject defendants to treble damages and attorneys' fees is one of law, in respect of which no special deference is to be accorded to the trial court's determinations. Manalapan Realty v. Manalapan Twp. Committee, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Although the judge found defendants had generally committed regulatory violations in drafting the contract and in obtaining permits, he specified only some of the acts or practices proscribed in N.J.A.C. 13:45A-16.2 which defendants had violated in connection with constructing the addition. There is no question that defendants violated N.J.A.C. 13:45A-16.2(a)(10)(i) (Building Permits), which provides:
No seller contracting for the making of home improvements shall commence work until he is sure that all applicable state or local building and construction permits have been issued as required under state laws or local ordinances; ....
Defendants failed to obtain the necessary permits prior to construction, and thus began construction in violation of this regulation. They subsequently obtained the necessary permits.
Additionally, defendants violated N.J.A.C. 13:45A-16.2(a)(12) (Home improvement contract requirementswriting requirement), which provides as follows:
All home improvement contracts for a purchase price in excess of $200.00, and all changes in the terms and conditions thereof shall be in writing. Home improvement contracts which are required by this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form all terms and conditions of the contract, including, but not limited to, the following:
i. The legal name and business address of the seller, including the legal name and business address of the sales representative or agent who solicited or negotiated the contract for the seller;
ii. A description of the work to be done and the principal products and materials to be used or installed in performance of the contract. The description shall include, where applicable, the name, make, size, capacity, model, and model year of principal products or fixtures to be installed, and the type, grade, quality, size or quantity of principal building or construction materials to be used. Where specific representations are made that certain types of products or materials will be used, or the buyer has specified that certain types of products are to be used, a description of such products or materials shall be clearly set forth in the contract;
iii. The total price or other consideration to be paid by the buyer, including all finance charges. If the contract is one for time and materials, the hourly rate for labor and all other terms and conditions of the contract affecting price shall be clearly stated;
iv. The dates or time period on or within which the work is to begin and be completed by the seller;
v. A description of any mortgage or security interest to be taken in connection with the financing or sale of the home improvement; and
vi. A statement of any guarantee or warranty with respect to any products, materials, labor or services made by the seller.
A "proposal" dated December 15, 1993, constituted the written contract in this case. The contract violated regulatory requirements in that it: was not signed by the parties; did not contain a description of the products or materials to be used or installed; and did not set forth the date the work was to begin and be completed. N.J.A.C. 13:45A-16.2(a)(12)(ii) and (iv).
Defendants also violated N.J.A.C. 13:45A-16.2(a)(10)(i) because the plumbing work was not performed by a licensed plumber. As we have noted, N.J.A.C. 13:45A-16.2(a)(10)(i) requires that a seller must obtain "all applicable state or local building and construction permits" prior to construction. The Uniform Construction Code as adopted in New Jersey provides that "[p]lumbing and electrical work shall not be undertaken except by persons licensed to perform such work pursuant to *671 law, except in the case of a single family homeowner on his own dwelling." N.J.A.C. 5:23-2.15(b)(2)(i). Smith, who was not a licensed plumber, performed work on this project in violation of that regulation.
Defendants violated N.J.A.C. 13:45A-16.2(a)(10)(ii), as well, in that they attempted to collect final payment prior to a final inspection being performed and, consequently, without furnishing inspection certificates. That regulation provides:
Where midpoint or final inspections are required under state laws or local ordinances, copies of inspection certificates shall be furnished to the buyer by the seller when construction is completed and before final payment is due or the signing of a completion slip is requested of the buyer.
Another potential regulatory violation was unaddressed by the trial judge. N.J.A.C. 13:45A-16.2(a)(7)(i) establishes that it is unlawful for a seller to:
Deliver materials, begin work, or use any similar tactic to unduly pressure the buyer into a home improvement contract, or make any claim or assertion that a binding contract has been agreed upon where no final agreement or understanding exists[.]
Here, plaintiff Renee Roberts testified that she told Smith not to start work on the addition until the spring of 1994 because she did not want it built in wintertime. Smith, however, testified that plaintiff Stanley Roberts was constantly badgering him to begin the work. On November 26, 1993, both plaintiffs were surprised to find that the hole for the foundation had been dug.
Plaintiffs also contended defendants violated N.J.A.C. 13:45A-16.2(a)(9) (Sales representations) because Smith misrepresented that he was going into business for himself, when in fact he was employed by Diversified Systems. N.J.A.C. 13:45A-16.2(a)(9)(ii) establishes it as unlawful to
[k]nowingly fail to make any material statement of fact, qualification or explanation if the omission of such statement, qualification or explanation causes an advertisement, announcement, statement or representation to be false, deceptive or misleading....
Here, however, although plaintiff Stanley Roberts testified that he thought Smith was working for himself, there was no testimony to establish Smith knew that and was thus obliged to tell plaintiffs that he was employed by Diversified. Moreover, the written proposal contained the name, address, and phone number of Diversified Systems, the putative seller, as required by N.J.A.C. 13:45A-16.2(a)(12).
Additionally, plaintiffs contended defendants violated N.J.A.C. 13:45A-16.2(a)(12)(ii) in that they failed to provide plaintiffs with a blueprint of the addition. But the regulation does not require the submission of a blueprint. Instead, defendants were required to provide a detailed description of the work to be done. This was accomplished in the written proposal, except to the extent we have already noted that disclosures required by N.J.A.C. 13:45A-16.2(a)(12) were not made.
These latter unmeritorious contentions aside, it is clear that defendants violated several specific regulations, thereby committing unlawful practices under the Act. Cox, supra, 138 N.J. at 18, 647 A.2d 454. Thus, plaintiffs met the first requirement of N.J.S.A. 56:8-19 for entitlement to treble damages and attorneys' fees.
The next question is whether plaintiffs suffered a compensable "ascertainable loss" as set forth in N.J.S.A. 56:8-19. Cox, supra, 138 N.J. at 22, 647 A.2d 454. "A private plaintiff victimized by any unlawful practice under the Act is entitled to `threefold the damages sustained' by way of `any ascertainable loss of moneys or property, real or personal....'" Id. at 21, 647 A.2d 454 (quoting N.J.S.A. 56:8-19). "Significantly, the standard of proof in consumer-fraud actions by private plaintiffs is higher than the standard for the Attorney General's enforcement proceedings." Ibid. (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473, 541 A.2d 1063 (1988)). See also Jiries v. BP Oil, 294 N.J.Super. 225, 229, 682 A.2d 1241 (Law Div.1996). "Although the Attorney General need not prove that a victim was damaged by the unlawful practice, to warrant an award of treble damages a private *672 plaintiff must show an `ascertainable loss.'" Cox, supra, 138 N.J. at 21, 647 A.2d 454.
The trial judge found an ascertainable loss to have been incurred, but held as well that a party must also show that the ascertainable loss was caused by the unlawful practice. N.J.S.A. 56:8-19; Cox, supra, 138 N.J. at 23, 647 A.2d 454 (citing Ramanadham v. New Jersey Mfrs. Ins. Co., 188 N.J.Super. 30, 33, 455 A.2d 1134 (App.Div.1982)) ("The `causation' provision of N.J.S.A. 56:8-19 requires plaintiff to prove that the unlawful consumer fraud caused his loss."); Meshinsky, supra, 110 N.J. at 473, 541 A.2d 1063 ("[A] private plaintiff must show that he or she suffered an `ascertainable loss ... as a result of the unlawful conduct."); Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, 390 A.2d 566 (1978) (The plaintiff must show he or she "suffers a loss due to" an unlawful practice.); Ramanadham, supra, 188 N.J.Super. at 33, 455 A.2d 1134 (The plaintiff must establish "the extent of any ascertainable loss, particularly proximate to a misrepresentation or unlawful act of the defendant condemned by the ... Act."). Manifestly, the trial judge was correct in his analysis of the law, that a causal relationship must exist between the ascertainable loss and the unlawful practice. The question remaining is whether the trial judge was correct in determining that the necessary causal relationship did not exist in this case. Cox, supra, furnishes all the guidance that is required.
In Cox, the plaintiff's decedent (plaintiff) had entered into a home repair proposal contract with defendant Sears to renovate his kitchen. 138 N.J. at 7, 647 A.2d 454. "The contract required Sears to remove old cabinets and install new ones, and to install a vinyl floor, a countertop, a sink and faucet with a full backsplash, wallpaper, a microwave hood, a garbage disposal, and one additional electrical outlet." Id. at 7-8, 647 A.2d 454. "The contract also required Sears to re-install all appliances, to sheetrock walls as necessary, to cover the exhaust fan, and to vent the microwave hood outside." Id. at 8, 647 A.2d 454. The plaintiff financed the entire $7,295.69 cost on his Sears credit card. The plaintiff subsequently agreed that Sears would rewire and update the electrical work at an additional cost of $1500. Ibid.
Ultimately, the plaintiff was dissatisfied with the work and sued Sears for breach of contract and violation of the Act. Sears counterclaimed for the full contract price, which had never been charged to plaintiff's account. Ibid.
The Supreme Court held that by failing to comply with the Home Improvement Practices regulations, Sears had engaged in an "unlawful practice" in violation of the Act. Id. at 19-20, 647 A.2d 454. The Court found that the "jury could have concluded that Sears' work was deficient in that the resulting appearance of the renovations was unattractive, that Sears' rewiring of the kitchen was incomplete and substandard, and that Sears' work failed to comply with building and electrical codes and home-repair regulations." Id. at 8, 647 A.2d 454. For example,
[t]he microwave hood was installed in a lopsided manner and contained a large crack. The door to the microwave slammed shut if not held open. The wallpaper did not cover all wall areas and did not line up evenly with the cabinets. The wood coloring of the cabinets and the trim did not match, and one cabinet had cracks in it. The glue in the cabinet joints was visible and the joints were not clean. Sears improperly re-installed the moldings so that they were not flush to the ceiling or walls. The vinyl flooring buckled, and Sears did not install cove molding to keep it in place. The garbage-disposal unit leaked. The microwave vent recirculated exhaust back into the house instead of outside.

[Id. at 8-9, 647 A.2d 454.]
Additionally, "the entire kitchen had not in fact been rewired. Much of the old wiring remained, and the new wiring did not meet the 1988 building-code requirements." Id. at 9, 647 A.2d 454. Moreover, Sears had not obtained the required building, plumbing, electrical, and construction permits. Ibid. Thus, the Court held that the "[p]laintiff has met the first requirement of N.J.S.A. 56:8-19 by proving that Sears committed an unlawful practice.... [T]hat unlawful conduct consisted of Sears' violation of consumer-fraud *673 regulations relating to permits, inspections, and certificates." Id. at 21-22, 647 A.2d 454.
The Court also held that the plaintiff had suffered an "ascertainable loss." Id. at 22, 647 A.2d 454. The Court reasoned:
The purpose of the regulations is to protect the consumer from hazardous or shoddy work. Had all applicable permits been obtained before Sears began work, the issued permits would have triggered periodic inspections of the renovations. An inspector would have detected any substandard electrical wiring or cabinet work and would not have permitted the work to progress or have issued the required certificates until Sears corrected the deficiencies. Because the inspections did not occur, the wiring remained unsafe, the cabinets remained unattractive, and both resulted in a loss measured by the cost of repairing those conditions.

[Ibid.]
In contrast here, defendants ultimately obtained all of the necessary permits to begin construction, albeit late; periodic inspections were done; and final gas, plumbing, and electrical approvals were received. Additionally, the trial judge found, with support in the evidence, that the addition was essentially constructed in a workmanlike manner, although there were details of inadequacy"some minor disputes"in the nature of "punch list" items.
Nevertheless, defendants billed plaintiffs for final payment before a certificate of occupancy was received, in violation of N.J.A.C. 13:45A-16.2(a)(10)(ii); and they violated other regulations. Moreover, the project was characterized by a history of interim inspection disapprovals; and even as late as the time of trial plaintiffs had still not received a certificate of occupancy, fire approval, or interim framing approval for the addition. The building inspector testified that he would issue a certificate of occupancy if plaintiffs insulated a crawlspace, raised a bilco door to grade and installed a lock, installed an access hole in the ceiling, and allowed him to conduct an inspection of the framing, walls, and insulation when the access hole was cut into the ceiling. The cost of providing access to the building inspector and making necessary repairs would constitute an ascertainable loss caused by an unlawful practice, and would entitle plaintiffs to treble damages. All of these cost elements related directly to defendants' failure to obtain final approval before billing plaintiffs, as required by regulation.
The record does not establish the separate cost of each of those repairs and costs of compliance, however. Plaintiffs' expert testified that defendants' failure to install a lock on the crawlspace door and provide access to the attic was a deficiency; but he did not specify how much the associated repairs would cost. The expert testified that the total cost of repairs would be $1940. There was no particularized testimony regarding the cost of insulating the crawl space, raising the bilco door, or providing access to the building inspector.
Plaintiffs offered no detail, as would have been preferable, of the costs attributable to each of those particular acts or omissions of defendants that constituted, as a matter of law, strict liability consumer fraud. Nevertheless, plaintiffs established, within the spirit of the Act as elucidated in Cox, supra, 138 N.J. at 21-24, 647 A.2d 454, a sufficient connection between their ascertainable losses and defendant's violative conduct to require defendants to demonstrate that particular losses bore no relationship to their regulatory infractions. It is clear from the facts of Cox and the policy considerations underlying its holdings, that once a plaintiff has established a significant relationship between the defendant's unlawful practices and the plaintiff's ascertainable losses it becomes the defendant's responsibility to isolate particular losses which do not have the required causal connection. Because defendants offered no dissociative proofs along these lines, the damages proved by plaintiffs must, on this record, be trebled. We view the trial court's determination on the record developed to have disregarded the underlying intendment of the Act, allowing defendants too easily to escape the statutorily prescribed remedies for their violative conduct.
In an ordinary breach-of-contract case, the function of damages is simply to make *674 the injured party whole, and courts do not assess penalties against the breaching party. However, the goals of the Act are different. Although one purpose of the legislation is clearly remedial in that it seeks to compensate a victim's loss, the Act also punishes the wrongdoer by awarding a victim treble damages, attorneys' fees, filing fees, and costs. In that sense, the Act serves as a deterrent. Therefore, in determining whether plaintiff has established a loss under the Act, we are guided by but not bound to strict contract principles.

[Cox, supra, 138 N.J. at 21, 647 A.2d 454.]
It follows that attorneys fees should be awarded as well. We note, however, the error in the trial judge's conclusion that his determination not to award treble damages necessarily precluded an award of attorneys fees. The two remedies are clearly independent of each other.
[A] consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Performance Leasing [Corp. v. Irwin Lincoln-Mercury], 262 N.J.Super. [23, 34, 619 A.2d 1024 (App.Div.1993), certif. denied, 133 N.J. 443, 627 A.2d 1148 (1993)] (holding that where jury found that defendant had committed unconscionable commercial practice and thus had violated Act, but that plaintiff had not been damaged by that violation, strong precedent supported award to plaintiff of attorneys' fees).

[Cox, supra, 138 N.J. at 24-25, 647 A.2d 454.]
Moreover, "the Consumer Fraud Act makes no distinction between `technical' violations and more `substantive' ones." BJM Insulation & Const., Inc. v. Evans, 287 N.J.Super. 513, 517-18, 671 A.2d 603 (App.Div.1996). "The fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." Cox, supra, 138 N.J. at 25, 647 A.2d 454. Because plaintiffs established an unlawful practice under the Act they were entitled to attorney's fees.
Reversed and remanded for a determination of the attorneys fees to be awarded to plaintiffs, including those attributable to this appeal, see R. 2:11-4 (last sentence), and for the entry of a modified judgment awarding those fees and treble damages.
NOTES
[*] Improperly pleaded as Diversified Services, General Construction and Remodeling, this error has been corrected for the purpose of this opinion.