**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5810-17T4

MYCWHOME, LLC,

     Plaintiff-Respondent,

v.

SHINIKEQUA WHITE and
JONATHAN WHITE,

     Defendants-Appellants.

_____

Argued October 3, 2019 – Decided October 23, 2019

Before Judges Koblitz, Whipple, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. DC-003785-17.

James Alexander Lewis, V, argued the cause for appellants (Pennington Law Group, attorneys; James Alexander Lewis, V, on the brief).

Christopher George Olsen argued the cause for respondent (Schwartz, Hana & Olsen, PC, attorneys; Christopher George Olsen, on the brief).

PER CURIAM

Defendants Jonathan White and Shinikequa White appeal the June 26, 2018 judgment, issued after a bench trial, awarding plaintiff MyCWHome $10,822[1] for the unpaid balance of the parties' contract to construct an addition on defendants' home. Defendants also appeal the trial court's August 8, 2018 order vacating its earlier order granting defendants' request for attorney fees. We affirm.

## I. Factual background.

The trial revealed the following facts. On December 14, 2016, defendants and plaintiff's representative, Wence Flores, signed a contract to build a home addition for $47,630. Although the contract stated that plaintiff "will have [forty-five] days from the signing of contract or availability of material[,] whichever is later" to complete the project, the forty-five day timeframe was a standard contract term used for all of plaintiff's works, regardless of the actual time required. Because of the delay in the permit approval process, plaintiff did not begin the construction until April 2017.

While the permit process was pending, defendants told plaintiff about extra work they wanted completed. To reflect the extra work, plaintiff prepared a change order contract for $1373. Rather than sign the document, defendants

---

[1] We round all monetary amounts to the nearest dollar.

A-5810-17T4

verbally agreed to the price and contracted to pay plaintiff a total of $49,725, which included the original contract price, the change order price, and permit fees.

After construction began, defendants requested that plaintiff perform additional work not reflected in the original or change order contract. These additional requests were confirmed either verbally, via email, or via a group text between defendants and Flores. Because of the delay in receiving the permits, plaintiff explained at trial that it "allowed certain things . . . to be done as a courtesy to kind of compensate . . . for the time it took to do the job."

In early July 2017, Flores and defendants took a walk-through of the addition. Flores made a list of items that defendants were concerned about. Plaintiff's contractor, Christopher Ruggiero, was scheduled to make the repairs after the walk-through, but defendants cancelled two appointments with Ruggiero.

Because plaintiff and defendants agreed to open up a wall after the original contract was made and permits obtained, the addition failed the final fire inspection. To pass the inspection, plaintiff needed to add an additional smoke and carbon monoxide detector. Flores texted defendants to inform them

that an electrician was scheduled to come the next day to install the detector, but defendants responded by saying they wanted to hold off on the electrical work.

Five days later, defendants emailed Flores that they were cancelling their contract. At that point, defendants had paid $35,903 of the $49,725 owed. Plaintiff sued defendants for the remainder of the contract balance and defendants filed multiple counterclaims. At the one-day bench trial, Flores, Ruggiero, and Jonathan White testified. The court issued an oral opinion, finding that while the plaintiff's conduct did not amount to a violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, plaintiff breached the contract when it failed to install a heating, ventilation, and air conditioning system (HVAC). After plaintiff's judgment was reduced by the costs incurred by defendants to install the system, plaintiffs were awarded $10,822.

## II. Standard of review.

A final determination made by a trial court conducting a non-jury case is "subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). When error in the fact-finding of a trial court is alleged, we do not disturb the trial court's findings unless we are "convinced that those findings and conclusions [are] 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence

as to offend the interests of justice.'" Greipenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Inv'rs Ins. Co. of America, 65 N.J. 474, 484 (1974)). The trial court's findings are "considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, 65 N.J. at 484.

We serve a limited function on appeal and do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 474 (1999). However, "the scope of appellate review is expanded when the alleged error on appeal focuses on the trial court's evaluations of fact, rather than his or her findings of credibility." Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171, 179 (App. Div. 2012). The trial court's interpretation of law is reviewed de novo. Id. at 179-80.

### III. Defendant's arguments.

### A. Trial court's factual findings.

Defendants argue that the trial court's "naked legal conclusions must be ignored and must be set aside" because the trial court made no factual findings regarding the defendants' claims of 1) breach of the implied covenant of good faith and fair dealing; 2) promissory estoppel; 3) unjust enrichment; 4)

negligence; 5) common law fraud; and 6) violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18.

The trial court discussed defendants' breach of contract and CFA claims in its oral opinion, dismissing the remainder of defendants' claims without explanation. We affirm based on our independent analysis of those claims in light of the court's findings of fact.

First "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001). Even when a party's performance does not violate an express term of a contract, a party may be found to have violated this implied covenant. Ibid. In the context of service contracts, good faith and fair dealing is defined as "performance or enforcement of a contract [that] emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Id. at 245 (quoting Restatement (Second) of Contracts § 205 cmt. a (Am. Law Inst. 1981)). In contrast, bad faith is evident when a party "violate[s] community standards of decency, fairness or reasonableness." Ibid. (quoting Restatement (Second) of Contracts § 205 cmt. a (Am. Law Inst. 1981)).

Defendants allege "[p]laintiff violated reasonable standards of good faith and fair dealing by failing to perform the work in a timely manner and by neglecting to perform work that meets basic standards, as evidenced by the repeated failures to pass inspections." The trial court addressed the timeliness issue in the context of defendants' breach of contract and CFA claims, finding that plaintiff's failure to complete the project within forty-five days "was waived by the [defendants] in failing to at any time complain about the length of time it was taking" to complete the project. Furthermore, Flores testified that as a courtesy for the delay in starting the project because of the permit approval process, plaintiffs performed various services for defendants free of charge. Additionally, only the final inspection was failed and, although plaintiff wanted to correct the issue, defendants did not permit plaintiff to do so. Plaintiff acted in good faith and dealt fairly with the defendants and thus defendants have no claim under this theory.

Second, promissory estoppel requires a showing of each of the following "four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros. v. Bd. of Chosen Freeholders of Cty. of Burlington, 194 N.J. 223, 253 (2008). Defendants claim "[p]laintiff failed to

perform a significant portion of the construction services," which resulted in defendants suffering a detriment. The trial court found, based upon the testimony and photographs, that while the HVAC system still needed to be installed, the project was completed, but for one "minor item." Therefore, defendants suffered no detriment.

Third, to establish unjust enrichment, a party must show that the adverse party "received a benefit and that retention of that benefit without payment would be unjust." EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 350 (App. Div. 2015) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)). This claim is meritless. Plaintiff received no benefit at the expense of defendants.

Fourth, to prevail under a negligence claim, personal injury or property damage must be alleged. Aronsohn v. Mandara, 98 N.J. 92, 97 (1984). Economic expectations between parties to a contract are not entitled to supplemental protection by negligence principles. Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 581 (1985). When a homeowner sues a contractor, "what is involved . . . is essentially a commercial transaction, and [the homeowner's] claim is rested on the violation of the implied contractual provision that the [project] would be constructed in a workmanlike fashion."

Aronsohn, 98 N.J. at 107. In other words, "the contractor's negligence would constitute a breach of the contractor's implied promise." Ibid. "[R]ecovery for economic loss on a negligence theory [is] inappropriate." Id. at 97; Spring Motors Distribs., 98 N.J. at 580-82.

Fifth, "the elements of common-law fraud are '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172–73 (2005)). Defendants allege plaintiff provided inaccurate estimates, inflated costs, and failed to provide a plan to pass inspection. However, no evidence was produced at trial to support these allegations. Plaintiff scheduled an electrician to install an additional smoke and carbon monoxide detector to pass fire inspection, but defendants told plaintiff to cancel the appointment.

Sixth, "[t]he purpose of the TCCWNA is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 428 (2013) (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457

9

(2011)).  Plaintiffs included no illegal terms or warranties in the contract. Defendants have no claim under the TCCWNA.

## B. CFA.

Defendants argue the trial court erred in finding that the misrepresentation in the contract did not violate the CFA.  To state a claim under the CFA, each of the following three elements must be alleged: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).  Unlawful conduct is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . or with the subsequent performance of such person  . . . .
>
> [N.J.S.A. 56:8-2.]

"[T]he business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . ."  Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 115 (App. Div. 2005) (quoting New Jersey Citizen Action v. Schering-Plough

Corp., 367 N.J. Super. 8, 13 (App. Div. 2003)).  While consumer fraud involves an unconscionable commercial practice, "a breach of contract is not per se unfair or unconscionable and does not alone violate the [CFA]."  Palmucci v. Brunswick Corp., 311 N.J. Super. 607, 616 (App. Div. 1998).

The trial court found that "the contract itself [did not] violate the [CFA]." Defendants made no showing of unlawful conduct.  While Flores testified that he was aware defendants wanted the addition to be completed as quickly as possible, the trial court explained that he "heard nothing credible in the case to suggest that that [forty-five]-day period was somehow the inducement to enter into this contract."  Plaintiff had conversations with defendants regarding the scope and different phases of the work, which belied a forty-five day completion.

Unlawful practices, as defined by the CFA, "fall into three general categories: affirmative acts, knowing omissions, and regulation violations." Cox v. Sear Roebuck & Co., 138 N.J. 2, 17 (1994).  Pursuant to the following Home Improvement Practices regulations:

> All home improvement contracts for a purchase price in excess of $500.00, and all changes in the terms and conditions thereof shall be in writing. Home improvement contracts which are required by this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties

> thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract . . . .
>
> [N.J.A.C. 13:45A-16.2(a)(12).]

If a contract violates this regulation, the first element of the CFA's three-step analysis is satisfied. Roberts v. Cowgill, 316 N.J. Super. 33, 38-40 (App. Div. 1998). To satisfy elements two and three, the party bringing the claim must demonstrate an ascertainable loss caused by the unlawful practice. Id. at 40-41. Upon such a showing, the party is entitled to attorney fees, costs, and treble damages. Id. at 45.

Although plaintiff prepared a change order to reflect the extra work defendants wanted completed, the parties did not sign it. The verbal confirmation of the change order was insufficient and amounted to an unlawful practice under the CFA. Defendants, however, failed to prove causation or an ascertainable loss. "A major purpose of the Home Improvement Practices regulations is to provide 'objective assurances' of the 'terms and criteria according to which home-improvement work [should] be done.'" Cox, 138 N.J. at 16. Plaintiff substantially completed the work listed in the change order and deducted from its claim the cost for the smoke and carbon monoxide detector that was not installed. Because defendants failed to prove they suffered an

ascertainable loss caused by plaintiff's failure to complete the project within forty-five days or a signed changed order, defendants are not entitled to attorney fees or treble damages.

## C.  Breach of contract.

As to plaintiff's failure to install the HVAC system, the trial court found that defendants "established by way of setoff that the entire contract was not performed and that the mini -- the split [HVAC] system was not installed." Therefore, defendants were entitled to the cost of the installation of the system and plaintiff's judgment was reduced by $3000.

In addressing the fact that the contract was not completed within the contracted forty-five days, the trial court stated:

> I find as a matter a law that . . . breach was waived by the defendant in failing to at any time complain about the length of time it was taking.
>
> The [remedy] . . . if it took four months to get started, was to cancel the contract after [forty-five] days, but that wasn't done, so the defendant waived that.

The trial court correctly found that defendants waived their right to argue breach of contract.  To prevail on a breach of contract claim, a party must prove that a contract existed and that the opposing party's failure to do what the contract required, resulted in the party suffering a loss.  Globe Motor Co. v.

13

Igdalev, 225 N.J. 469, 482 (2016). When a party continues performance of a contract after a breach has occurred, the party waives its right to sue for breach. Garden State Bldgs., L.P. v. First Aid Bank, N.A., 305 N.J. Super. 510, 524 (App. Div. 1997). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Knorr v. Smeal, 178 N.J. 169, 177 (2003). Waiver may be "found if the conduct of [an entity] after information of . . . breach of contract is such as to justify an inference of affirmation rather than rescission of the contract.'" Iafelice ex rel. Wright v. Arpino, 319 N.J. Super. 581, 588 (App. Div. 1999) (quoting Bonnet v. Stewart, 68 N.J. 287, 294 (1975)).

Defendants were aware that the contract stated the work would be completed within forty-five days of the contract date. Construction began approximately 120 days from the contract date, yet defendants did not cancel the contract or allege a breach at that time.

### D. Evidentiary rulings.

We review evidentiary rulings for an abuse of discretion. State v. Prall, 231 N.J. 567, 580 (2018). Defendants argue that the trial court erred when it refused to allow defendants to enter into evidence documents relating to the

additional services required to complete the project after cancellation. Defendants attempted to enter into evidence an invoice from their landscaper for correcting the grading of the property, an estimate for aesthetic repairs to plaintiff's work, and a contract for the installation of a HVAC system. Plaintiff objected to each of these documents based on a lack of foundation and hearsay. The trial court allowed the contract for the HVAC system to be admitted to assess damages, but refused to admit the other documents.

While the trial court refused to admit the physical documents, Jonathan White was not prevented from testifying about the costs he had incurred or would incur. He explained that the grading cost $750 and the remedial repairs estimate was $5300. Thus, defendants were able to present the information to the court.

Defendants also argue they were subjected to undue prejudice because Ruggiero was not sequestered during Flores' testimony. N.J.R.E. 615 states: "At the request of a party or on the court's own motion, the court may, in accordance with law, enter an order sequestering witnesses." Defense counsel objected to Ruggiero's presence in the courtroom only after the lunch break, when Flores was being cross-examined. The court said it did not notice Ruggiero sitting in the room earlier in the trial, adding that Ruggiero "left for quite a bit of time"

15

during Flores' examination. Plaintiff's counsel then suggested that Ruggiero be sequestered and the court agreed to do so.

"The purpose of sequestration is to discourage collusion and expose contrived testimony." Morton Bldgs., Inc. v. Rezultz, Inc., 127 N.J. 227, 223 (1992). Ruggiero referenced Flores' testimony during his direct examination twice: first, in the context of agreeing with Flores that every town differs in the amount of time it takes to receive permits and second, when referring to removing a wall. Defendants did not request sequestration, and no prejudice occurred due to the partial sequestration.

Given our standard of review of a bench trial, we find no reversible error. Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5810-17T4