**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BERNARD OLCOTT,

        Plaintiff - Appellee,

v.

DELAWARE FLOOD COMPANY, a
limited partnership under the laws of
Oklahoma; LAYTON OIL COMPANY, a
Kansas corporation; WILLIAM
DOUGLAS LAYTON, individually and
as general partner of DELAWARE
FLOOD COMPANY 1976 DH;
DELAWARE FLOOD COMPANY 1977
EH; DELAWARE FLOOD COMPANY
1978 FH; DELAWARE FLOOD
COMPANY 1979 Ltd; MICHAEL
GALESI,

        Defendants - Appellants,

and

FIRST NATIONAL BANK OF
OKLAHOMA CITY,

        Defendant.

Nos. 01-5119 & 02-5021

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 83-CV-179-E)**

R. Thomas Seymour (C. Robert Burton with him on the briefs), Seymour Law Firm, Tulsa, Oklahoma, for Defendants-Appellants.

David Feinsilver, The Feinsilver Law Group, P.C., Millburn, New Jersey, for Plaintiff-Appellee.

---

Before **TACHA**, Chief Judge, and **BALDOCK** and **MURPHY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Defendants appeal the district court's entry of a $1.1 million default judgment. The district court entered default as a discovery sanction after finding Defendants repeatedly, willfully, and in bad faith failed to comply with discovery orders. On appeal, Defendants assert the district court was without jurisdiction to enter a default judgment. Defendants also raise numerous additional challenges to the district court proceedings. We have jurisdiction pursuant to 28 U.S.C. § 1291.[1] We affirm the judgment and damage

---

[1] We <u>sua sponte</u> filed an order to show cause why the appeal should not be dismissed for lack of subject matter jurisdiction. Specifically, we questioned whether the district court's judgment order was a final decision because the order did not resolve certain non-party claims asserting ownership over funds held in escrow. <u>See</u> 28 U.S.C. § 1291. The parties' briefs explained and further review confirmed that the unresolved claims affect the court's execution of the judgment rather than the merits of the judgment order. The district court's retention of ministerial matters concerning execution of its judgment is a collateral matter and does not deprive us of jurisdiction to hear the appeal. <u>See</u> <u>Copeland By and Through Copeland v. Toyota Motor Sales U.S.A., Inc.</u>, 136 F.3d 1249, 1252 (10th Cir. 1998) (Generally, a district court decision is final when the court has rendered a decision that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.). The district court's judgment order is a final

(continued...)

-2-

award, but remand with instructions to recalculate the prejudgment interest award.

## I.

Plaintiff Bernard Olcott, an investor in oil drilling and exploration limited partnerships, filed a complaint against Defendants in 1982 alleging federal securities law violations and various state law tort, fraud and breach of contract claims.[2] The claims arose out of Defendants' solicitation, sale and operation of oil tax shelter limited partnership units between 1976 and 1979. Plaintiff's suit sought damages and rescission of the investment contracts. In February 1986, after unsuccessfully attempting to employ more traditional discovery motions, Plaintiff filed a motion to compel Defendants to render an accounting of all partnership assets and income. On March 4, in exchange for the court's postponement of the jury trial scheduled to begin March 17, Defendants consented to entry of an accounting order requiring them to provide Plaintiff within six months "a full, complete, meaningful, and formal accounting . . . setting forth all items of contribution, income, and expense as well as the disposition of all assets and monies . . . ."

Defendants subsequently submitted three accountings. After each submission,

---

[1](...continued)
decision and this Court has jurisdiction to hear the appeal.

[2] This case is before us for the third time. A detailed factual description of the parties, claims and lengthy procedural history appears in Olcott v. Delaware Flood Co., 76 F.3d 1538 (10th Cir. 1996) (hereinafter "Olcott II"). We limit our current discussion to facts relevant to the issues before us. Our factual recitation is complicated somewhat by the inaccurate legal terminology used in the district court proceedings.

Plaintiff challenged the sufficiency of the accounting. The court-appointed accounting expert also found each of the submitted accountings wholly inadequate. The court held an evidentiary hearing after each submission and, after each hearing, concluded the submitted accounting did not comply with the court's accounting orders. After each hearing, the court ordered Defendants to file a supplemental accounting.

After the third submission, and a delay of almost four years, the court concluded Defendants' failure to comply was willful and in bad faith. The court partially based its conclusion on the testimony of two of Defendant Michael Galesi's former attorneys. Each testified Galesi agreed to provide an accounting solely to obtain a continuance and never had any intention of complying with the court's accounting order. Counsel also testified that Galesi still had no intention of complying with the court's order and would rather "take his chances" than provide the accounting. Plaintiff also introduced evidence that none of Defendants had requested bank records or made any other effort to produce an accounting in compliance with the court's order. As a result of the willful discovery violations, the court entered an order of default on February 8, 1990. See Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 55(a). In its order, the court stated:

> This court must order a sanction appropriate to the severity of Defendants' abuse of the legal process. Plaintiff is entitled to a judgment against the Defendants, jointly and severally, for his investment of $1.9 million less any portion of those funds which Defendants can establish were utilized for legitimate purposes under the terms and provisions of the limited partnership agreements. There will be a trial at which the burden will be on the Defendants to establish to the satisfaction of the fact finder that any portion of Plaintiff's contribution was utilized for

legitimate business purposes under the terms of the agreements among the parties.[3]

The court also ordered Defendants to comply with its prior accounting order by correcting

the deficiencies identified by the court's expert.

Following the court's entry of default, Defendants filed a summary judgment

motion asserting the statute of limitations barred Plaintiff's federal securities act claims.

The district court ultimately dismissed Plaintiff's federal claims on statute of limitations

grounds.[4]  The court also dismissed Plaintiff's state law claims, concluding that it did not

have jurisdiction after dismissing the federal claims.  In the same order, without referring

to its prior entry of default, the court sanctioned Defendants for their failure to comply

with discovery orders by ordering Defendants to pay $402,527.98 in attorneys' fees and

accounting expenses.  Plaintiff appealed the dismissal of his federal and state claims and

sought enforcement of the order entering default.  Defendants cross-appealed the

imposition of the monetary sanction.

On appeal, this Court affirmed dismissal of Plaintiff's federal securities act claims

---

[3]  Although the court termed the anticipated proceeding a "trial," the proceeding described is not a trial on the merits but a hearing to determine the amount of damages. See Fed. R. Civ. P. 55(b)(2).  Entry of default precludes a trial on the merits.  See Jackson v. Fie Corp., 302 F.3d 515, 524 (5th Cir. 2002).

[4]  See Olcott II, 76 F.3d at 1542-43 for a discussion of the Supreme Court decision and subsequent Congressional actions that changed the law and prompted the district court to consider Defendants' summary judgment motion despite its prior entry of default. The court properly could consider Defendants' motion because, although the court entered an order of default pursuant to Fed. R. Civ. P. 55(a), the court had not yet entered judgment by default pursuant to Fed. R. Civ. P. 55(b).  See Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 147 (10th Cir. 1985) (discussing distinction).

with respect to the 1976, 1977 and 1978 partnership interests, but reversed and remanded for reconsideration the district court's dismissal of the 1979 securities act claims and all pendant state law claims. Olcott II, 76 F.3d 1538 (remanding Plaintiff's securities act claims for further factual findings and remanding Plaintiff's pendant state claims with instructions to conduct the appropriate death knell analysis). Olcott II also affirmed the district court's imposition of the monetary sanction, but declined to rule upon the merits of the default order after concluding the court's entry of default was not a final determination. Id. at 1558-59. In Olcott II, we assumed the district court intended to "abandon" its entry of default when it entered an order dismissing all claims without entering judgment on the default pursuant to Fed. R. Civ. P. 55(b). Id. Olcott II expressly instructed the district court that it could revisit the issue on remand: "If the court ultimately revives Mr. Olcott's cause of action based on his 1979 investment, the court could take the opportunity to revisit the appropriateness of a default judgment at that time." Id. at 1559.

On remand, the district court again dismissed as time barred the federal securities claims based on Plaintiff's 1979 investment, but elected to retain pendant jurisdiction over Plaintiff's state law tort, fraud and breach of contract claims. The court also indicated its intent to apply the default entered prior to the appeal. At a January 1998

conference, the court specifically ruled that Plaintiff's remaining claims would "merge"[5]

into the default, stating: "I further find and order that [Plaintiff's remaining claims]

merged into the 1.9 million dollar judgment entered by this Court."

In a February 4, 1998 order, the district court dismissed many of Plaintiff's state

law claims. The court also ruled Plaintiff's remaining fraud and breach of contract claims

would not be tried during the set-off hearing:

> The primary issue raised by the motions for summary judgment is whether Plaintiff is entitled to pursue his state law claims and receive the benefit of the $1.9 million default judgment he has previously been awarded. Plaintiff has stated both at the preliminary trial conference and at status conferences, that he wishes to accept the $1.9 million default judgment, but that he wishes also to be able to put on evidence for his fraud case as well. Plaintiff concedes that damages are the same, but argues that proving the fraud case is necessary because he may incur problems proving his case if the default judgment is ultimately reversed. This is not sufficient reason to allow Plaintiff to put on evidence to prove a fraud claim when Plaintiff has already received a judgment in his favor entitling him to the same damages. In the interest of efficiency and judicial economy, the trial of this matter is limited to the issues encompassed by the default judgment previously entered.[6]

The court conducted a set-off hearing to establish and quantify Defendants' entitlement to

credits against the default. Defendants had the burden of establishing their entitlement to

credits by producing an accounting that complied with the court's prior accounting orders.

---

[5] The district court used the term "merge" to describe its decision to enter default on Plaintiff's state law claims. See supra, f.n. 7. The district court "merged" Plaintiff's state law claims into the prior default order rather than issuing an order formally entering default on these claims.

[6] As previously noted, the court had not previously entered a "default judgment" pursuant to Fed. R. Civ. P. 55(b), but had entered an order of default pursuant to Fed. R. Civ. P. 55(a). The proceeding to quantify damages was not a "trial" but a hearing pursuant to Fed. R. Civ. P. 55(b)(2).

The court limited its consideration of Defendants' evidence to accounting materials directly tracing Defendants' use of Plaintiff's funds. The court did not permit Plaintiff to put on evidence related to his fraud or contract claims.

On June 6, 2001, after a three-day hearing, the court entered judgment in favor of Plaintiff in the amount of $1,077,014.70 plus interest. The court specifically found Defendants failed to cure the deficiencies in the accounting. With the exception of certain Plaintiff-stipulated credits, the court ruled Defendants failed to establish entitlement to any credits against the default. The court subsequently entered an order quantifying the prejudgment interest award and awarding attorneys' fees and costs.

## II.

In this appeal, Defendants first assert the district court was without jurisdiction to conduct a set-off hearing or to enter the final judgment order because the court had previously dismissed all substantive claims. Whether the district court had jurisdiction is a legal question we review de novo. Kunkel v. Continental Casualty Co., 866 F.2d 1269, 1273 (10th Cir. 1989).

## A.

In its pre-trial order, the district court summarized its prior ruling limiting the set-off hearing to issues encompassed by the order entering default:

> The Court further held [in its February 4, 1998 Order] that "in the interest of efficiency and judicial economy the trial of this matter is limited to the issues encompassed by the default judgment previously awarded" by the February 8, 1990 Order. Hence, Plaintiff's claims for common law fraud, breach of contract, rescission, negligence, mismanagement, malfeasance, misfeasance, partnership

-8-

waste, breach of fiduciary duties and interference with business and investment objectives, were <u>dismissed</u>.

(emphasis added). Defendants rely on this single statement in the pre-trial order to argue the district court dismissed Plaintiff's state law fraud and contract claims. The district court's description of its prior ruling was an unfortunate misstatement. The February 4, 1998 order clearly did not dismiss Plaintiff's fraud and breach of contract claims. Instead, the order noted that these claims were still viable but that, in the interest of judicial economy, "Plaintiff [would not be allowed] to put on evidence to prove a fraud claim when Plaintiff has already received a judgment in his favor entitling him to the same damages." The district court never dismissed Plaintiff's fraud and breach of contract claims.

Reading the pre-trial order as a whole clarifies that "in the interest of efficiency and judicial economy" the district court "merged" these claims into the default order, in effect placing all substantive matters on hold pending resolution of the default order.[7]

---

[7] The district court "merged" Plaintiff's state law claims into the prior default order rather than issuing a second order formally entering default on these claims. <u>See</u> Fed. R. Civ. P. 55(a). The court's failure to formally enter default is procedurally incorrect, but the court's intent to resolve the accounting matter rather than try Plaintiff's claims on the merits was evident. Although the court did not use the correct legal terminology, the court made its intention perfectly clear at every status conference, at the pre-trial conference, and during the set-off hearing. The set-off hearing was Defendants' final opportunity to comply with the court's accounting orders. In the event Defendants complied, the court presumably intended to lift the default sanction and proceed to trial on the merits. <u>See</u> Fed. R. Civ. P. 55(c). When Defendants failed to comply, the court enforced the sanction by entering judgment. <u>See</u> Fed. R. Civ. P. 55(b).

The pre-trial order states that jurisdiction is predicated on the claims Defendants allege the court dismissed: "Jurisdiction is predicated upon the May 5, 1997 Order of [the Court], wherein this Court ruled that this Court would retain jurisdiction over Plaintiff's pendant state claims." The order also notes: "Although Mr. Olcott would be willing to accept a final default judgment for the amount of his investment plus pre-judgment interest less his actual return on investment, he has not consented to forego his breach of contract and fraud claims . . . ." (emphasis in the original).

In transcripts of hearings, the court also repeatedly notes that Plaintiff's claims were "merged" into the default rather than dismissed. At a January 1998 conference, the court specifically ruled that Plaintiff's remaining claims had merged into the default judgment: "I further find and order that the contract claims of Plaintiff merged into the 1.9 million dollar judgment entered by this court." During the August 10, 2000 pretrial conference, at which the parties reviewed the pretrial order in question, the district court repeatedly reaffirmed the merger of Plaintiff's breach of contract and fraud claims into the sanction judgment: "This is not a contract case. The contract case and the fraud case merged into the Court's $1.9 million judgment."

At the set-off hearing, the district court instructed counsel that Plaintiff's fraud claims would be addressed, if necessary, following the court's resolution of the default judgment proceedings. Finally, in its June 6, 2001 judgment order, the court stated:

> On remand [from the appellate court] this Court granted summary judgment on a number of claims and held that the remaining claims merged into the $1.9 million default judgment award entered in 1990.

-10-

(emphasis added). Despite the misstatement in the pre-trial order, the parties were well aware that Plaintiff's state law fraud and breach of contract claims remained viable. The record does not support Defendants' argument that the district court dismissed these claims.[8]

B.

Even if we assume the district court dismissed all substantive claims after entering the order of default, the court retained jurisdiction to enforce the sanction. Defendants argue that constitutional limits on subject matter jurisdiction restrict the district court's authority to enforce a sanction after dismissing all substantive claims. See U.S. Const. Art III, § 2. Article III limits the federal courts' subject matter jurisdiction to specifically defined cases and controversies. Id. Accordingly, Article III limits a federal court's authority to impose and enforce sanctions when the case or controversy at issue is not properly before the federal courts. See Hernandez v. Conriv Realty Assoc., 182 F.3d 121, 124 (2d Cir. 1999) (holding "where federal subject matter jurisdiction does not exist, federal courts do not have the power to dismiss with prejudice, even as a procedural

---

[8] Defendants assert Plaintiff agreed to accept a default judgment in lieu of pursuing his fraud and breach of contract claims and thus consented to dismissal of these claims. This clearly is not the case. Plaintiff repeatedly objected to the district court's decision to limit the set-off hearing to issues related to the default judgment. Defendants also note that Plaintiff did not cross-appeal the dismissal of his remaining claims. The district court did not enter an order dismissing the claims. Accordingly, there was no dismissal for Plaintiff to appeal.

-11-

sanction."); Ray v. Eyster (In re: Orthopedic "Bone Screw" Prods. Liability Litig.), 132

F.3d 152, 156-57 (3d Cir. 1997) (same).  But see Allen v. Exxon Corp. (In re The Exxon

Valdez), 102 F.3d 429, 431 (9th Cir. 1996) (default judgment imposed as discovery

sanction is enforceable even if it is later determined the court lacked subject matter

jurisdiction).   If a case or controversy is properly before the federal courts, however,

Article III's restriction on federal courts' subject matter jurisdiction is not implicated.

See Willy v. Coastal Corp., 503 U.S. 131, 132 (1992) (discussing Article III-based limits

on court's ability to impose sanctions where court never had subject matter jurisdiction).[9]

Plaintiff's complaint asserted federal securities act claims and pendant state law

claims.  The district court had original subject matter jurisdiction over the federal claims

pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367(a).

Dismissal of a properly pled federal claim does not retroactively deprive the court of

subject matter jurisdiction.  See Bell v. Hood, 327 U.S. 678, 682 (1946) (federal

---

[9] Although we reach the same result, we recognize our analysis differs from that employed in Olcott II.  Olcott II similarly affirmed the district court's imposition of a sanction after the district court dismissed all substantive claims.  But Olcott II affirmed after concluding the sanction was punitive rather than civil in nature.  A punitive sanction may be enforced even absent subject matter jurisdiction.  See Willy, 503 U.S. at 132. Olcott II did not decide whether the district court had subject matter jurisdiction when it entered the prior monetary sanction.  Because Defendants asserted the district court did not have jurisdiction, and Plaintiff never argued otherwise,  Olcott II began its analysis with the assumption that the district court did not have subject matter jurisdiction.  The Olcott II punitive/civil sanction analysis is based on Article III's restrictions on federal jurisdiction.  The analysis is properly applied to sanctions entered by a federal court without subject matter jurisdiction.  See id.  The analysis is unnecessary in a case in which the district court had subject matter jurisdiction when it entered a sanction.

-12-

jurisdiction is not defeated by the possibility that complaint fails to state a cause of action on which a plaintiff could actually recover). Nor does the court's dismissal of all substantive claims deprive the court of authority to enforce a previously entered sanction. A district court retains jurisdiction to impose and enforce sanctions until the court enters a final judgment.[10] See Fed. R. Civ. P. 54(b) (any order that fails to adjudicate all rights and liabilities does not terminate the action). See also 28 U.S.C. § 1291 (limiting appellate jurisdiction, which divests district court of jurisdiction over matters connected to the appeal, to final decisions of the district court). District court proceedings are not final until the district court has rendered a decision that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. See Copeland, 136 F.3d at 1252. This matter was not final until the district court entered its final judgment order quantifying Plaintiff's damage award following the set-off hearing. The February 4, 1998 order, which Defendants allege dismissed Plaintiff's remaining substantive claims, expressly contemplates further proceedings before the district court. Accordingly, the

---

[10] Contrary to Defendants' assertions, Olcott II does not dictate otherwise. In Olcott II, the district court entered an order dismissing all claims and imposing a monetary sanction without referring to its prior entry of default. We found significant the district court's omission of any reference to the entry of default and concluded the district court intended "only to impose the [monetary] sanction [and] to abandon the default judgment as a sanction." Olcott II specifically ruled that the district court's judgment order dismissing all claims was a final decision. By contrast, every order the district court entered following remand expressly stated the district court's intent to enforce the entry of default. Defendants allege the district court dismissed Plaintiff's substantive claims in the February 4, 1998 order. Although we find otherwise, even were this the case the order is not final in that it expressly contemplates subsequent proceedings on the default sanction. See Copeland, 136 F.3d at 1252 (discussing finality of district court decisions).

order did not constitute a final decision and did not divest the district court of jurisdiction to enforce the sanction.

In sum, the record does not support Defendants' argument that the district court dismissed all of Plaintiff's substantive claims. But even assuming the district court inadvertently dismissed all substantive claims after entering default, the court expressly retained jurisdiction to enforce the sanction. The district court proceedings were not final, and the court had jurisdiction to enforce its prior sanction.

III.

Defendants next assert the district court violated their constitutional right to a jury trial. The district court determined that the set-off hearing, limited to ascertaining Defendants' compliance with court discovery orders, required resolution of equitable rather than legal issues. Accordingly, the court concluded Defendants did not have a right to a jury and ruled that the set-off hearing would be tried before the bench. Defendants assert they were entitled to a jury pursuant to Fed. R. Civ. P. 55(b)(2) and the Seventh Amendment of the Constitution. Following the entry of default, Fed R. Civ. P. 55(b)(2) authorizes the district court to conduct an evidentiary hearing to determine the amount of damages. The Rule does not contain an inherent jury requirement, but preserves the right to a jury "when and as required by any statute of the United States." Defendants assert the Seventh Amendment provides the right to a jury because Plaintiff's complaint sought money damages.

Defendants would have been entitled to a jury at a trial on the merits of Plaintiff's

-14-

legal claims. But the set-off hearing was not a trial on the merits of these claims. Instead the district court held the hearing following its entry of default for Defendants' willful discovery violations. See Fed. R. Civ. P. 37(b)(2). Defendants do not have a constitutional right to a jury trial following entry of default. See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l., Inc., 982 F.2d 686, 692 (1st Cir. 1993) ("Following the entry of default under Fed. R. Civ. P. 37(b)(2), a party does not have a right to a jury trial under either Fed. R. Civ. P. 55(b)(2) or the Seventh Amendment.") (quoting Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir.1990)); Dierschke v. O'Cheskey, 975 F.2d 181, 185 (5th Cir. 1992) ("in a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages"); Adriana Int'l Corp., 913 F.2d at 1414 (citing Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir. 1974). See also Sells v. Berry, 24 Fed. Appx. 568, 571 (7th Cir. 2001). Accordingly, the district court did not err in conducting the set-off hearing without a jury.

IV.

Defendants also raise two merit-based challenges to the district court's final default judgment order. "Decisions to enter judgment by default are committed to the district court's sound discretion, and our review is for an abuse of discretion." Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997). We will not disturb the court's decision without a clear showing that the decision was based on a clearly erroneous factual finding or that it manifests a clear error of judgment. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

First, Defendants assert that the evidence introduced at the set-off hearing does not support the court's final judgment. The court's February 8, 1990 order entering default stated that Plaintiff was entitled to reimbursement of the $1.9 million he invested in the partnership interests, but that the damage award would be reduced to the extent Defendants could establish "to the satisfaction of the fact finder that any portion of Plaintiff's contribution was utilized for legitimate business purposes." The court later clarified that evidence in support of any claimed off-set was limited to "direct proof" in the form of an accounting directly tracing Defendants' use of Plaintiff's funds. Defendants failed to introduce any evidence in the form required.

Nonetheless, Defendants claim the evidence introduced at the set-off hearing established that Plaintiff's entire contribution was utilized for legitimate business purposes under the terms of the contract. Defendants' argument requires this Court to interpret the terms of the underlying investment contract. As such, it is a merits argument foreclosed by the district court's default judgment. See Jackson, 302 F.3d at 525 ("[D]efendant by his default, admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established.")(internal quotation marks and citations omitted). The district court expressly instructed the parties that it would not hear arguments based on the contractual provisions in the underlying agreements.[11] After the entry of default,

_____

[11] The district court properly refused to consider evidence Defendants introduced
(continued...)

-16-

Defendants were not entitled to raise merits-based argument before the district court. Id. The district court's entry of a default judgment precludes Defendants from raising such arguments on appeal. Id.

Defendants also assert the district court erred in finding the accounting presented at the set-off hearing was not in substantial compliance with the court's prior accounting orders. Whether the accounting presented complied with the court's accounting orders is a factual finding to which this Court gives substantial deference. Olcott II, 76 F.3d at 1558. We will not disturb the court's factual finding unless clearly erroneous. See Cartier, 59 F.3d at 1048.

Plaintiff's accounting expert testified on the sufficiency of the accounting and delineated numerous grounds in which Defendants' submission failed to comply with the court order. Where a factual finding rests upon the credibility of a witness, Rule 52(a) requires that this Court give even greater deference to the findings of the trial judge. Id. Substantial evidence exists to support the court's determination that the accounting presented was not in substantial compliance with the court's prior orders. Accordingly,

[11](...continued)
in an effort to defend the contract claims on the merits. After an entry of default, a defendant cannot defend a claim on the merits. See Jackson, 302 F.3d at 524 ("A default judgment is unassailable on the merits."); Adriana Int'l Corp., 913 F.2d at 1414 ("[A] default judgment generally precludes a trial of the facts except as to damages."). Defendants argue that the set-off hearing was, in reality, a trial on the merits. But, as the district court repeatedly emphasized, the purpose of the set-off hearing was to force Defendants to produce a full accounting and, failing that, to award Plaintiff damages based on the willful discovery violation; it was not a trial on the merits of the underlying claims. See Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 55.

this claim of error also is without merit.

V.

Finally, Defendants challenge the district court's prejudgment interest award. This court reviews the district court's decision to award prejudgment interest for an abuse of discretion and will reverse only if we are left with a definite conviction that the court clearly erred in its judgment. See Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1288 (10th Cir. 1998).[12]

The district court entered default judgment on Plaintiff's pendant state law claims. Where state law claims are before a federal court on supplemental jurisdiction, state law governs the court's award of prejudgment interest. Mills v. River Terminal Ry. Co., 276 F.3d 222, 228 (6th Cir. 2002). The district court applied Oklahoma state law. But, as we clarified in Olcott II, 76 F.3d at 1550, the relevant law in this case is the law of the transferor court. Plaintiff originally filed this action in the District of New Jersey and the pendant state claims alleged violations of New Jersey law. Accordingly, New Jersey law, rather than Oklahoma law, governs.

Under New Jersey law, a court may award prejudgment interest in its discretion, and the court's exercise of its discretion will not be disturbed on appeal unless it represents "a manifest denial of justice." Liberty Lincoln-Mercury v. Ford Motor Co.,

---

[12] Defendants first assert prejudgment interest cannot be awarded on a sanction. As a sanction, the district court entered a default judgment. The court did not abuse its discretion in awarding prejudgment interest on a default judgment.

-18-

134 F.3d 557, 574 (3d Cir. 1998) (applying New Jersey law). A court clearly may award prejudgment interest on tort claims, including fraud claims. See New Jersey Rule 4:42-11. A court also may award prejudgment interest on contract claims. Cooper Dist. Co., Inc. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (applying New Jersey law); Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1070 (N.J. 1988). "Moreover, the rule that limited prejudgment interest awards to cases where damages were liquidated or clearly ascertainable in advance has been significantly eroded." Meshinsky, 541 A.2d at 1070. Today, the purpose of an award of prejudgment interest is "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Cooper Distrib. Co., 63 F.3d at 284. The primary consideration is whether defendants, rather than the plaintiff, had use of the funds in question, not whether the amount in controversy is clearly fixed. See id.

Given the district court's factual findings and the lengthy delays caused by Defendants' willful failure to comply with discovery orders, the district court did not abuse its discretion in awarding prejudgment interest. But the district court did err in applying Oklahoma rather than New Jersey law. Accordingly, we affirm the court's award of prejudgment interest, but remand for recalculation based on New Jersey Rule 4:42-11(b). See North Bergen Rex Transp., Inc., 730 A.2d at 851 (reaffirming that N.J.R. 4:42-11(b) governs the award of prejudgment interest on contract as well as tort claims). See also Liberty Lincoln-Mercury, 134 F.3d at 574 (same).

VI.

Plaintiff's claims have been pending before the federal courts for over twenty years. Defendants willful refusal to comply with the district court's discovery orders is a significant source of the delay. Enough is enough. We AFFIRM the June 6, 2001 judgment order and damage award. We also AFFIRM the district court's award of prejudgment interest, but REMAND with instructions to recalculate the prejudgment interest award pursuant to New Jersey Rule 4:42-11(b).[13]

SO ORDERED.

---

[13] Defendants' Motion to Strike Portions of Appellee's Answer Brief is denied.