IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2007

Charles R. Fulbruge III
Clerk

No. 06-61018

SARAH N. RATLIFF,

Plaintiff-Appellant,

CHARLES E. GIBSON, III; GIGI GIBSON;
THE GIBSON LAW FIRM, PLLC,

Appellants,

v.

LAWRENCE E. STEWART, M.D., Elder,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, SMITH, and GARZA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

In her suit alleging she was harmed by a dangerous drug, Sarah Ratliff, instead of suing Edsel Stewart, the doctor who had prescribed the drug, sued

Lawrence Stewart, his son and also a physician. The district court concluded that "the plaintiff's counsel's conduct was totally without basis in law or fact and that plaintiff's counsel unnecessarily and vexatiously multiplied the proceedings in this matter at the expense of defendant Stewart." The court awarded Stewart attorneys' fees and expenses to be paid by Ratliff's counsel, who appeal, arguing that the court was without jurisdiction to make the award and that, in any case, it abused its discretion in finding them at fault.

Because the district court had collateral jurisdiction and did not abuse its discretion, we affirm the jurisdictional ruling. Because the court incorrectly assessed the amount owed, we vacate the award of $6,093.26 and render judgment for $4,488.26.

I.

In November 2002, Sarah Ratliff sued drug companies and two doctors in Mississippi state court over complications she claims she suffered from the prescription of Stadol NS. On February 21, 2003, the pharmaceutical defendants removed the action to federal court, alleging that the two physicians had been fraudulently joined to defeat diversity. Judge Pickering was assigned the case.

At some point in late summer or early fall of 2003, after removal, Dr. Lawrence Stewart was served with process. Unfortunately, he was the wrong doctor. Ratliff's attorneysSSwho received the case on referral from Louis BurghardSS knew, from the information sent with the referral, only that "Dr. Stewart" in McComb, Mississippi, had prescribed the drug, and, without checking as to which Dr. Stewart was being referred to, Ratliff's attorneys sued the wrong Dr. Stewart, who was the correct Dr. Stewart's son.

Stewart repeatedly informed plaintiff's counsel, by telephone and in writing, that they had sued the wrong doctor. Receiving no response, Stewart filed an answer on September 24, 2003, and continued to argue to Ratliff's lawyers

that he did not have any relevant information whatsoever, because he was not involved in the facts constituting the suit. Ratliff's attorneys, however, failed to reach Ratliff to ask her to confirm or deny Stewart's protestations.

In the spring of 2004, Stewart moved to dismiss, or alternately for summary judgment, and requested attorneys' fees. He attached an affidavit stating that his only patient with the name of Sarah Ratliff had never been treatedSSby him, at leastSSwith Stadol NS and that, in fact, that person named Sarah Ratliff had told him she was not the Sarah Ratliff who was suing him. Ratliff's attorneys filed a response in opposition to Stewart's motion.

It was at that point, after the response in opposition had been filed, that Ratliff's attorneys asked Ratliff whether they had sued the wrong doctor, and she confirmed that they had. That communication was about seven months after Stewart was sued, notwithstanding his repeated remonstrances. Ratliff's attorneys thenSSfinallySSconfessed error, but not until more than one month after they had learned from their client that they had incorrectly sued Stewart.

According to letters dated in June and July 2004, counsel for Stewart wrote Judge Senter concerning attorneys' fees after Judge Senter's law clerk had contacted them to inform them that Ratliff's attorneys had confessed error in response to Stewart's motion to dismiss. On July 21, 2004, a magistrate judge granted Ratliff's motion to substitute parties.[1] On August 4, 2004, the case was formally reassigned to Judge Senter,[2] who on August 12 dismissed with prejudice Ratliff's suit against Stewart. The order of dismissal did not award attorneys' fees or costs, though Stewart had requested them.

The case was again reassigned on January 3, 2005, when it was given to

---

[1] Ratliff's attorneys were no more careful the second time: Instead of substituting Lawrence Stewart with the estate of Dr. Edsel Ford Stewart, they moved to replace him with "the estate of the elder Dr. Lawrence E. Stewart, M.D."

[2] Judge Pickering received a recess appointment to the Fifth Circuit on January 16, 2004, requiring a reassignment of his cases.

Judge Starrett. Evidently that change did not reach Stewart, because on January 14, 2005, his counsel wrote Judge Senter another letter, again reminding him of the request for attorneys' fees. That letterSSsent to the wrong judgeSSwas addressed 156 days after Judge Senter entered dismissal in favor of Stewart. On March 27, 2005, after a settlement agreement had been reached in January of that year, Judge Starrett "dismissed [the case as] to all defendants, with prejudice, with the parties to bear their own respective costs."[3]

On July 29, 2005, Judge Senter, from whom the case had been reassigned in January of that year, sanctioned Ratliff and her attorneys pursuant to rule 11 of the Federal Rules of Civil Procedure. Ratliff's counsel filed a motion to alter or amend that judgment, arguing that, among other things, the case had been assigned to Judge Starrett. On August 10, 2005, Judge Senter vacated his order.

On August 18, 2005, Stewart filed a motion to consider the previously filed request for attorneys' fees to Judge Starrett, who, on March 24, 2006, adopted Judge Senter's rule 11 opinion and award. Ratliff's counsel filed a motion to alter or amend that order and judgment on the ground, inter alia, that the requirement of rule 11 had not been met because no separate motion had been made by Stewart, meaning that rule 11(c)(1)(A) was not satisfied, and because there was no show cause order by the court, meaning that rule 11(c)(1)(B) was not satisfied either. On September 19, 2006, Judge Starrett agreed with Ratliff's attorneys as to rule 11 but found that sanctions were appropriate against Ratliff's attorneys under 28 U.S.C. § 1927.[4]

---

[3] Though this order appears to be a complete dismissal, it apparently was not. Dr. O'Neal, the other physician sued, did not obtain a final order dismissing the claims against him until April 28, 2006.

[4] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and (continued...)

4

## II.

Determinations of subject matter jurisdiction are reviewed de novo. Urban Developers LLC v. City of Jackson, 468 F.3d 281, 297 (5th Cir. 2006) (citing USX Corp. v. Tanenbaum, 868 F.2d 1455, 1457 (5th Cir. 1989)). The imposition of sanctions pursuant to § 1927 is reviewed for abuse of discretion. "'Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court.'" Dawson v. United States, 68 F.3d 886, 896 (5th Cir. 1995) (quoting Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995)). A district court necessarily abuses its discretion if its ruling is based on an "erroneous view" of the relevant legal standards "or on a clearly erroneous assessment of the evidence." Whitehead v. Food Max, Inc., 332 F.3d 796, 802-03 (5th Cir. 2003) (quoting Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990)).

## III.

The first question is whether the district court had jurisdiction to impose sanctions under § 1927 more than a year after Stewart had been formally dismissed from the case. Ratliff's attorneys argue that because the court entered a final judgment long before awarding attorneys' fees, and because the court's order did not reserve jurisdiction, the court was powerless to sanction them.

Although the district court no longer had jurisdiction over the subject matter of the dispute,[5] the collateral jurisdiction doctrine permits courts to sanc

---

[4] (...continued)

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

[5] Even if the dates are charitably construed in favor of Stewart (i.e., if we focus on the amount of time between Judge Senter's order dismissing Stewart on August 12, 2004. and the letter incorrectly sent to Judge Senter from Stewart's counsel on January 14, 2005, as distinguished from the time between the dismissal and the formal motion to Judge Starrett, the or (continued...)

tion lawyers, even after a final judgment on the underlying merits. "It is well established that a federal court may consider collateral issues after an action is no longer pending. . . . Thus, even 'years after the entry of a judgment on the merits' a federal court c[an] consider an award of counsel fees." Cooter & Gell, 496 U.S. at 395-96 (quoting White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451 n.13 (1982)).

In Sprague v. Ticonic National Bank, 307 U.S. 161 (1939), the Court held that, as part of its equitable powers, a federal court can grant one party "the entire expenses of the litigation," id. at 165, even if "it [is] after the end of the term at which the main decree was entered," id. at 170. "Sprague [concerned] the power of a federal court to award counsel fees pursuant to an application filed several years after the entry of a judgment on the merits." White, 455 U.S. at 451 n.13. "Since we view the petition for reimbursement as an independent proceeding supplemental to the original proceeding and not a request for a modification of the original decree," the lower court's invocation of the traditional equitable rule that "a final decree in a suit in equity could be revised only during the term of court of its entry" was inapt. Sprague, 307 U.S. at 170. "The passage of time thus presented no bar to an award of fees. Although Sprague was decided under the then-applicable rules of equity, the Court suggested that the same result would follow under the new Federal Rules of Civil Procedure." White, 455 U.S. at 451 n.13 (citing Sprague, 307 U.S. at 170 n.9).

In White, the Court again discussed the power of federal courts to award

---

[5] (...continued)

rect judge, on August 18, 2005), too much time had passed for the district court to retain subject matter jurisdiction over the underlying dispute. Here, Lawrence Stewart was expressly dismissed from the case on August 12, 2004, by the final judgment, which stated that "this case, as to Defendant Lawrence E. Stewart, M.D., is hereby DISMISSED WITH PREJUDICE." This was a final judgment. Cf. Live & Let Live, Inc. v. Carlsberg Mobile Home Props., Ltd., 592 F.2d 846, 848 (5th Cir.1979) (per curiam) ("Where the judgment is, however, expressly subject to matters which have not yet been resolved, it is not final.").

attorneys' fees after the underlying dispute has already been decided. At issue was whether, under 42 U.S.C. § 1988, a party could request fees beyond the ten-day time limit to "alter or amend [the] judgment." FED R. CIV. P. 59(e). The Court held that "a request for attorney's fees under § 1988 raises legal issues collateral to the main cause of actionSSissues to which Rule 59(e) was never intended to apply." White, 455 U.S. at 451. Thus, even though filed "approximately four and one-half months after the entry of a final judgment," the motion for fees was not untimely. Id. at 448.[6]

In Cooter & Gell, 496 U.S. at 394, the Court held that "district courts may enforce Rule 11 even after the plaintiff has filed a notice of [voluntary] dismissal under Rule 41(a)(1)." The Court noted that "[t]he district court's jurisdiction, invoked by the filing of the underlying complaint, supports consideration of both the merits of the action and [separately] the motion for Rule 11 sanctions arising from that filing," and "nothing in the language of Rule 41(a)(1)(I), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal." Id. The Court upheld the sanction even though it was "3 ½ years after [the] hearing on the motion and after dismissal of the complaint [that] the District Court ordered respondents to submit a statement of costs and attorney's fees." Id. at 389.

The reasoning in Cooter & Gell is on point here. The Court observed that "[l]ike the imposition of costs, [and] attorney's fees, . . . the imposition of a Rule 11 sanction is not a judgment on the merits . . . . Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." Id. at 396. "Such a determination may be made after the principal suit has been terminated." Id.

---

[6] See also Knighton v. Watkins, 616 F.2d 795, 797 (5th Cir. 1980) ("[A] motion for attorney's fees [under § 1988] is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment.").

Moreover, the holding in Cooter & Gell is more than just a statement of jurisdiction: It also directly concerns the proper interpretation of rule 11's substantive reach. "Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal." Id. at 398.

In Willy v. Coastal Corp., 503 U.S. 131 (1992), the Court went so far as to hold that a district court can constitutionally impose rule 11 sanctions even in cases where it is later determined that the court lacked subject matter jurisdiction over the underlying dispute.[7] "The District Court order . . . is one that is collateral to the merits. . . . Such an order implicates no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint.' It therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." Id. at 137-38 (quoting Cooter & Gell, 496 U.S. at 396).[8]

Requests for attorneys' fees and expenses under § 1927——like those under rule 11——are similarly part of a court's collateral jurisdiction. In Jackson Marine Corp. v. Harvey Barge Repair, Inc., 794 F.2d 989, 991 (5th Cir. 1986), we stated that "[a] request for fees under either Rule 11 or § 1927 requires the district court to make a determination which is collateral to the merits of a claim." We

---

[7] Ratliff's attorneys argue at length that the district court never had jurisdiction over this case and should not have granted summary judgment or the motion to dismiss. Although the court lacks subject matter jurisdiction and cannot grant summary judgment, it is not true that the court cannot dismiss a party. See, e.g., Dahiya v. Talmidge Int'l, Ltd., 371 F.3d 207, 210 (5th Cir. 2004). In any event, under Willy, even if the court lacked jurisdiction over the subject matter, sanctions constitutionally still can be imposed.

[8] See also Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc., 284 F.3d 575, 578 (5th Cir. 2002) ("The district court retains power to issue sanctions under Rule 11 even though the action is no longer pending before it.") (internal citations and quotations omitted).

held that, because of the collateral nature of requests under § 1927, "the trial court was not precluded by Fed. R. Civ. P. 59(e) from considering the issue of sanctions more than ten days after entry of final judgment on the merits." Id.

These authorities amply demonstrate that it is within the constitutional power of the district court to award attorneys' fees and costs, even though Stewart already had been formally dismissed. Likewise, though the court here used § 1927, and not rule 11, there is no reason why the substantive reach of § 1927 is not also sufficiently extensive to apply where collateral jurisdiction is exercised,[9] especially given that § 1927's text does not compel a contrary reading.[10]

Just as with rule 11, § 1927 is concerned with "baseless filings" that "burden[] courts and individuals alike with needless expense and delay," and "a litigant who violates [§ 1927, like one who violates rule 11,] merits sanctions even after a dismissal." Cooter & Gell, 496 U.S. at 398. Therefore, a district court has § 1927 available in its quiver where a party "unreasonably and vexatiously" "multiplies [judicial] proceedings," § 1927, even if the subject matter of the suit has already been decided, and, indeed, even if the court constitutionally

---

[9] Though rule 11 and § 1927 are not identical, see, e.g., Matta v. May, 118 F.3d 410, 413-14 (5th Cir.1997) ("Unlike Rule 11, § 1927 sanctions are, by the section's plain terms, imposed only on offending attorneys; clients may not be ordered to pay such awards."), they largely run in parallel. See, e.g., Travelers Ins. Co. v. St. Jude Hosp., Inc., 38 F.3d 1414, 1418 (5th Cir. 1994) ("The decision whether to use § 1927, or Rule 11 , or both, is within the discretion of the district court . . . ."); Click v. Abilene Nat'l Bank, 822 F.2d 544, 545 (5th Cir. 1987) ("There is, moreover, no obvious reason to differentiate sanctions imposed under Rule 11 from the sanctions that the district court may enter pursuant to Fed. R. Civ. P. 37 or 28 U.S.C. § 1927."); Brown v. Nationwide Mut. Ins. Co.,  805 F.2d 1242, 1244 (5th Cir. 1986) ("We are not inclined to disturb the district court's determination of an appropriate sanction . . . . Either Rule 11 or 28 U.S.C. § 1927 . . . authorizes the award of such sanctions, including reasonable attorney's fees, as the court deems appropriate to the violation before it.").

[10] See Steinert v. Winn Group, Inc., 440 F.3d 1214, 1223-24 (10th Cir. 2006) ("We . . . conclude that § 1927 sanctions are not untimely if sought or imposed after final judgment" though "[w]ith that said . . .  resort to § 1927 should not be unnecessarily or unreasonably delayed. . . . Although we believe that the district court should have curtailed the parties' nearly four-year odyssey over attorney fees, we will not invalidate the fee award on the record before us . . . .").

lacks jurisdiction over the principal dispute.

Ratliff's attorneys incorrectly argue that the collateral jurisdiction of the district court was extinguished before the attorneys' fees and costs were awarded. The above-cited authority is unambiguous on this point: Constitutionally, a party can obtain attorneys' fees even where its "application [is] filed several years after the entry of a judgment on the merits." White, 455 U.S. at 451 n.13 (citing Sprague, 307 U.S. at 170).[11] Thus, Ratliff's attorneys' argument, to be successful, must be that the court's collateral jurisdiction expired under the federal rules or some statute. As our discussion of Cooter & Gell suggests, that is a steep hill to climb, and the cases offered by Ratliff do not change the result.

Ratliff's attorneys' best case is Thomas v. Capital Security Services, Inc., 812 F.2d 984 (5th Cir. 1987), on reh'g en banc, 836 F.2d 866 (5th Cir. 1988). There, we stated that because the "motion requesting an award of attorney's fees came after the plaintiffs had appealed the district court's decision on the merits and the court's denial of the motion came while the plaintiff's appeal was pending before this court, the [doctrine of collateral jurisdiction] applies." Id. at 987. From this, Ratliff's attorneys argue that the district court could award sanctions only because the federal courts were still considering the case. But, they argue, if the appellate process ends or the time to appeal has lapsed, collateral jurisdiction also ends.

We disagree. First, in Thomas we did not explicitly set forth the rule that Ratliff's attorneys offer. Though the proposed rule may be a possible implication that can be drawn from this language in Thomas, it is not the only possible interpretation. We note, for instance, that unlike here where the fees were requested in the motion to dismiss, in Thomas the request for fees came after the district court's decision on the merits, and it could be that particular feature of

---

[11] Though the facts underlying Sprague occurred before the adoption of the federal rules, the constitutional aspect of the decision is still applicable.

the case that was being referenced. Whether additional restrictions, under the federal rules, apply where attorneys' fees are sought after the final judgment is rendered is not a question now before us.[12] Likewise, Thomas was decided before the Supreme Court shed light on the contours of the doctrine of collateral jurisdiction in Cooter & Gell and Willy.

The other cases relied on by Ratliff's attorneys are similarly unconvincing. They cite Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126 (11th Cir. 2004), for the proposition that district courts have jurisdiction to consider sanctions after dismissal of the entire case only if a party timely files a rule 59(e) motion. Given the decision in White, 455 U.S. at 451, that rule 59(e) does not bar requests for attorneys' fees under 42 U.S.C. § 1988, it is not surprising that this is not actually what our sister circuit said. Instead, the Hertz court held that if a party moves for a dismissal without prejudice to be instead a dismissal with prejudice, so that the party can obtain attorneys' fees under state law, the motion to alter or amend the judgment must comply with rule 59(e). Hertz, 16 F.3d at 1128-33. That this has nothing to do with the matter now before us needs no elaboration.

The decision in Olcott v. Delaware Flood Co., 327 F.3d 1115 (10th Cir. 2003), also does not support Ratliff's attorneys. That court stated that "[a] punitive sanction may be enforced even absent subject matter jurisdiction." Id. at 1122 n.9. Although, in dictumSSbecause the district court, in fact, had "expressly retained jurisdiction" so there was no final judgmentSSthe court of appeals stated that "[a] district court retains jurisdiction to impose and enforce sanctions until the court enters a final judgment," id. at 1123, that is not a holding.

---

[12] Cf. Prosser v. Prosser, 186 F.3d 403, 405-06 (3d Cir. 1999) (noting that the Third Circuit "requir[es] parties to file all motions for Rule 11 sanctions before entry of the court's final order," and courts must raise any sua sponte sanctions before then as well). White, however, makes plain that one need not "specifically request attorney's fees" under 42 U.S.C. § 1988 before or immediately after a final judgment. White, 455 U.S. at 446-52.

In *Mints v. Educational Testing Service*, 99 F.3d 1253 (3d Cir. 1996), the court addressed whether a district court retains jurisdiction to award attorneys' fees for expenses incident to remanding a removed action to state court. *Id.* at 1254. The court noted that 28 U.S.C. § 1447 "provides that an order remanding a case 'may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal,'" and held, using Cooter & Gell for guidance, that fees can be awarded post-remand. *Id.* at 1257-58. The court stated that "it might be argued that by not limiting entry of an order for fees . . . to the time the order for remand is entered we would leave an open-ended period for a party . . . to move for fees . . . after a remand." *Id.* at 1259. "Such a fear . . . would not be well grounded[, because] Fed. R. Civ. P. 54(d)(2)(B) directs that unless otherwise provided by statute or order of the court, a motion for attorney's fees . . . must be filed and served 'not later than 14 days after entry of judgment.'" *Id.*

This statement in *Mints* is also off-point. Most obviously, as observed in our discussion of *Thomas*, in the instant case Stewart moved for attorneys' fees before the court had dismissed him, so we need not address whether rule 54(d)'s requirement that a motion be filed "not later than 14 days after entry of judgment" has any relevance. This is not a case in which a party waits long after a final judgment to spring the issue of fees; that question had been raised before final judgment was entered.

## IV.

We also agree with the district court that Ratliff's attorneys engaged in sanctionable conduct under § 1927 and that the court did not abuse its discretion. It is not even a close question. Indeed, two district judges concluded that Ratliff's attorneys had misused the judicial process by failing to verify that they had sued the correct defendant, especially when the wrongfully-sued defendant

repeatedly informed them of their mistake.

Though Ratliff's attorneys loudly bray that they were not at fault and that Stewart ought to have provided an affidavit much earlier and should have given certain information in discovery instead of moving to dismiss, the district court was not in any way wrong in awarding Stewart his fees, and in any event the court certainly did not abuse its discretion. Though the court improperly relied on rule 11§§a mistake that the court has already remedied§§Ratliffs' attorneys' "righteous indignation" is misplaced, because, as the district court observed, their "excuses for not timely verifying that [they] sued the right doctor are spurious." The court rightly noted that "[i]t is plaintiffs' counsel's obligation to confirm that he has sued the right person even before such is called into question but surely after questions are raised. Plaintiffs' counsel's failure to simply verify with his client the identity of her doctor for almost a year after it was called into question is unacceptable."

We also do not agree with Ratliff's attorneys that the district court ran afoul of FDIC v. Calhoun, 34 F.3d 1291, 1300-01 (5th Cir. 1994), that because "a showing of improper purpose" is necessary under the vexatiousness prong, "the [district] court must make a separate determination on both the issue of the reasonableness of the claims and the purposes for which suit was instituted." Judge Starrett determined not only that Ratliff's attorneys had acted unreasonably; he also noted that they had "unreasonably and vexatiously multiplied the proceedings in this case before the court by failing to respond to numerous efforts of defense counsel to convince plaintiff's counsel that he had sued the wrong doctor; by forcing the defendant to file a motion to dismiss . . . ; and by responding to that motion and waiting for over one month to confess same." Though the district court's analysis of the two separate prongs§§unreasonableness and vexatiousness§§may not have been pellucid, the court did more than just conflate the two. When an attorney's conduct is so obviously unreasonable that a court can

infer an "improper purpose" from the fact that the attorney persisted in it, it is unnecessary for the court to explain at length why the vexatiousness prong has been met. As we explained in Thomas v. Capital Security Services, 836 F.2d 866, 883 (5th Cir. 1988) (en banc), "[l]ike a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award."

Here, unlike the situation in Calhoun, 34 F.3d at 1300, where we found that "a sanctioning court [must] do more than disagree with a party's legal analysis," the district court addressed a situation in which Ratliff's attorneys had unreasonably instituted proceedings against Stewart by not checking with their own client that the right doctor was being sued, and then unreasonably and vexatiously multiplied the proceedings by failing to verify that Stewart was the proper party once he objected, even going so far as to oppose his motion for dismissal, again without consulting their client. And once they had learned that they had erred, they waited for over a month to correct that error. An "improper purpose" sufficient to satisfy the vexatiousness requirement was easily met under such circumstances because§§unlike a mere disagreement with Ratliff's attorney's legal theory (which, at least ordinarily, standing alone, cannot create a statutorily sufficient inference of an "improper purpose")§§the continued conduct was so outrageous that the court could infer an "improper purpose" by the attorneys' otherwise inexplicable obstinance.[13]

---

[13] "Improper purpose" does not necessarily refer to bad faith or intent to harass. Vexation implies something broader than that. To "vex" is defined, among others things, as "to bring trouble or distress to," "to subject to mental suffering," or "to irritate or annoy," as well as "to tease or torment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2548 (1981). Consistent with this, in Calhoun we did not hold that the only way to establish an "improper purpose" is by showing bad faith. Indeed, any "reckless disregard of the duty owed to the court" can suffice. Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998).

Nor do we have any serious quarrel with the amount of fees awarded.[14] Under Browning v. Kramer, 931 F.2d 340, 344 (5th Cir. 1991), a court cannot order one party to bear the other's "entire financial burden" "[e]xcept when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in." Section 1927 "does not authorize the wholesale re-imbursement of a party for all of its attorneys' fees," but instead "only for excess costs, expenses and attorneys' fees reasonable incurred because of the attorney's unreasonable and vexatious multiplication of the proceedings." Id. at 344-45. Because it was unreasonable for Ratliff's attorneys to sue Stewart without first ascertaining whether he was the correct "Dr. Stewart," the question becomes when the vexatiousness requirement was met, at which point all fees thereafter became recoverable. It was satisfied the instant that Stewart contacted Ratliff's attorneys, who failed to inquire of Ratliff whether Stewart was the right defen-dant; at that point an "improper purpose" could be inferred.

The district court did not adequately differentiate between § 1927's two prongs when it awarded the entire amount of fees and costs. The amount award-ed included resources expended before Stewart's counsel had contacted Ratliff's attorneys to inform them of their blunder. Stewart's counsel sent a letter to Rat-liff's lawyer on September 24, 2003, informing him that a mistake had been made. The letter also noted that Stewart's counsel had previously "spoken twice with Tammy in your office regarding the . . . matter." According to the billing records submitted to the district court, "Tammy"SSGibson's legal assistantSSwas contacted on September 22. Based on that evidence, the vexatiousness require-ment was satisfied as of that date. All resources expended before that time, al-

<hr>

[14] At the end of its reply briefSSseemingly at randomSSRatliff's attorneys appear to sug-gest that because Ratliff's suit was originally filed in state court, the federal district court could not award attorneys' fees. Stewart was served with process after the case was removed, so Ratliff's attorneys' argument must be that notwithstanding removal, the court still had no au-thority to sanction. This argument, if it is Ratliff's argument, is waived for failure to present it adequately. See, e.g., United States v. Beaumont, 972 F.2d 553, 563 (5th Cir. 1992).

though wasted because of Ratliff's attorneys' unreasonable behavior, are not awardable under § 1927.

At the rate of $150 per hour, the 10.7 hours spent during that short period between September 3, 2003, when Stewart's counsel first began billing, and September 22, 2003, when Ratliff's attorneys' violated both prongs of § 1927, equals $1,605; that amount must be subtracted from the total owed Stewart. We therefore affirm the award under § 1927, but we vacate the award of $6,093.26 and, by subtracting $1,605, we render a judgment for $4,488.26.

For the foregoing reasons, the judgment is AFFIRMED in part and VACATED in part, and a judgment of $4,488.26 RENDERED.