**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0038-23

FRANK GARVEY and
ELEANOR GARVEY,

      Plaintiffs-Respondents/
      Cross-Appellants,

v.

OLIVER BUILDING
CONTRACTORS, LLC,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued March 11, 2024 – Decided March 22, 2024

      Before Judges Sabatino, Mawla, and Marczyk.

      On appeal from the Superior Court of New Jersey, Law
      Division, Cape May County, Docket No. L-0228-23.

      Frederick A. Jacob argued the cause for
      appellant/cross-respondent (Jacob Law Group, LLC,
      attorneys; Frederick A. Jacob, on the briefs).

      Paul M. Stanton argued the cause for
      respondents/cross-appellants (McCrosson & Stanton,
      PC, attorneys; Paul M. Stanton, on the briefs).

PER CURIAM

Defendant Oliver Building Contractors, LLC appeals from an August 3, 2023 order vacating an arbitration award entered in its favor against plaintiffs Frank and Eleanor Garvey, and a September 1, 2023 order denying defendant's motion for reconsideration. Plaintiffs have also cross-appealed from the August order. We affirm both orders, rejecting the arguments raised on the appeal, and do not reach the arguments raised on the cross-appeal for the reasons expressed in this opinion.

Plaintiffs hired defendant to renovate their Strathmere home in late summer of 2021. They and a representative of defendant met with an architectural planner several times to discuss the scope of the project prior to signing a contract. The planner presented project plans and drawings resulting in a one-page plan for the project, which was produced on July 29, 2021. The architectural plans were prepared on August 11, 2021. On September 2, 2021, an engineering firm prepared a draft foundation plan and draft structural notes and details, which totaled eleven pages. On September 17, 2021, defendant's secretary emailed plaintiffs a contract, which included an estimate of $389,796 as the total cost of the project. The email stated defendant "wanted to make sure [it] included everything from the architect's August drawings."

2

The parties disputed whether defendant had the full set of plans, including the September 2021 foundation and structural plans, prior to its transmittal of the contract estimate to plaintiffs. Defendant claimed it did not receive any other plans or drawings, aside from the July 2021 drawing, until October 2021, and plaintiffs and the planner testified a full set of plans were delivered to defendant prior to it bidding on the contract. Regardless, defendant's estimate was based on the July 2021 drawing and plaintiffs signed the contract on September 24, 2021.

Defendant began work on plaintiffs' home in November 2021. As the construction became delayed, plaintiffs emailed defendant to inquire when it received the plans from the architectural planner. Defendant responded that plaintiffs could find that information at the municipal construction office; it did not wish to give plaintiffs the information because it had "to work with the many architects around the area and [its] reputation is an essential part of that."

By May 2022, the project was only thirty percent complete, and plaintiffs had paid almost the entire contract price. In June 2022, defendant invoiced plaintiffs an additional $176,377.52.

Plaintiffs retained an attorney because defendant increased the price without their knowledge and performed work that was not in the original

contract without their authorization, a change order, or an explanation for the price increase. Plaintiffs paid the June 2022 invoice amount into their attorney's trust account, and the parties agreed to have a walk-through to review the work completed and the cost of the work yet to be completed. However, defendant and its attorney did not attend the walk-through.

Defendant abandoned the job on June 11, 2022. It claimed the reasons for the increased costs were that it discovered the floor joists ran in the opposite direction than indicated on the architectural plans. The prices also increased due to a delay, which defendant blamed on the planner's failure to submit the plans to the municipality in a timely manner to issue the construction permits. As a result, permits were not issued until February 2022, and construction was delayed because of the winter weather. In the meantime, the cost of the construction materials increased.

In September 2022, plaintiffs retained a different contractor to correct the work performed by defendant and complete the project. The new contractor estimated its work would cost $548,999. Plaintiffs ultimately paid the new contractor a total of $716,300.08.

Pursuant to the parties' contract, defendant filed a demand for arbitration alleging a breach of contract. Plaintiffs counterclaimed, alleging violations of

the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, and common law fraud. The counterclaim pointed out the uncontested fact defendant "was in the business of making home improvements as defined by [the Home Improvement Practice Regulations (HIPR),] N.J.A.C. 13:45A-16.1."[1]

The arbitrator conducted a six day hearing, and found "there was no actual fraud by either . . . [party], other than the violations of the . . . []CFA[] and the . . . []HIPR[]." Rather,

> because [plaintiffs] did not engage a contract administration professional there were informal and confused communications concerning the scope, changes, payments and other matters permeated the parties' relationships on this project and that created a culture and environment in which CFA and HIPR violations took place, which in turn, resulted in disputes and hostilities between the parties.

The arbitrator then calculated that defendant incurred costs totaling $365,167.52, which he reduced by: $6,550 of work defendant performed that was not in a workmanlike manner; $186,925 representing sums plaintiffs had already paid; $103,658.40, which was the trebled amount of $34,552.80 the

---

[1] The HIPR were adopted pursuant to the Attorney General's statutory authority under the CFA, which provides "the Attorney General, in addition to other powers conferred upon him by this act, may . . . promulgate such rules and regulations, . . . which shall have the force of law." N.J.S.A. 56:8-4. See Allen v. V & A Bros., Inc., 208 N.J. 114, 128-29 (2011).

A-0038-23

arbitrator found constituted plaintiffs' ascertainable damages under the CFA and HIPR; and $19,637.68 representing counsel fees and costs awarded to plaintiffs. The arbitrator ordered plaintiffs to pay defendant $48,396.44.

Plaintiffs filed a complaint and order to show cause in the Law Division to vacate the arbitration award, alleging the award was procured by undue means. They claimed the arbitrator: interrupted their witnesses; criticized them for not hiring a professional to review the contract; questioned whether the CFA and HIPR applied; prevented them from fully testifying about the defects in defendant's work; fell asleep during plaintiffs' case and then criticized plaintiffs' counsel for pointing it out; ignored the CFA and HIPR; coached defendant's attorney; inquired about and commented on the religious affiliations of the parties and their counsel; suggested plaintiffs should hire someone "to watch [the new contractor's] work"; admonished plaintiffs to "be delicate" in questioning the architectural planner because "architects do not like being questioned"; commented the architect was "not trustworthy"; and complimented defendant's representative for being a hard worker.

The Law Division judge rejected plaintiffs' claims the arbitrator was biased, disregarded evidence, or prevented them from presenting evidence. However, the judge found the award was procured by undue means under

6

N.J.S.A. 2A:23B-23(a)(1), because the arbitrator misapplied the law when he concluded plaintiffs were required to retain a professional to manage the project. The judge found the CFA and HIPR "place the burden of eliminating informal and confusing communications between a homeowner and a . . . home improvement contractor squarely on the contractor." The contractor's obligation includes "that there be change orders. Another is that the scope of the work be clearly stated in the contract." The arbitrator created "a requirement that simply doesn't exist under" the law. Moreover, the law does not "require there to be an attorney or an architect or other people involved." The arbitrator misapplied the law when he placed the burden on plaintiffs for the miscommunication between them and defendant "[w]hen it became apparent to . . . [defendant] he wasn't [going to] deliver the home for" the contract price. The judge concluded the arbitrator's interpretation of the CFA and HIPR "turn[ed] the purpose and intent of the [law] on its head." The judge did not, however, credit plaintiffs' allegations of inappropriate behavior during the arbitration hearings.

Defendant moved for reconsideration, arguing the judge was obligated to defer to the arbitrator's award. It asserted when the arbitrator's decision is read in context, his "findings of fact, leading to findings of law, are entirely appropriate."

7

The judge denied the reconsideration motion. He stated: "[Y]ou can only read [the] arbitrator's award . . . and conclude that he believed that there was some additional element that required the plaintiffs to . . . do something more than the [law] requires." The "additional element" imposed on plaintiffs was "an inaccurate statement of law and was inappropriate." The judge concluded: "If you want to say that's because he exceeded his powers [under N.J.S.A. 2A:23B-23(a)(4)] because he didn't follow the law, that's fine. If it's because he did so based on undue means, because he based [the award] on inappropriate law, that's fine too."

## I.

"[T]he decision to vacate an arbitration award is a decision of law," therefore our review is de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)). "Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). Because arbitration fosters finality by securing a speedy and inexpensive resolution of a matter, "reviewing courts must give arbitration awards 'considerable deference.'" Borough of Carteret v. Firefighters Mut. Benevolent

A-0038-23

Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201-02 (2013)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ciripompa, 228 N.J. at 11 (quoting Kearny PBA Loc. # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

A motion for reconsideration should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Therefore, we review an adjudication of a motion for reconsideration for an abuse of discretion. Id. at 389.

## II.

On the appeal, defendant argues the court mistakenly found the arbitrator shifted the burden under the CFA and HIPR to plaintiffs because the arbitrator merely stated plaintiffs were "partly responsible for the poor interactions that occurred between the parties." Defendant argues the arbitrator used a poor

choice of words, and his finding that plaintiffs proved ascertainable damages under the CFA and HIPR is proof he did not shift the burden or blame onto them.

Defendant avers it committed "technical violations" and was not the cause of plaintiffs' increased costs. It blames the cost of the project on: the planner, whom it claims was not an architect; winter weather; the fact the original contract did not include the additional work outlined in the new plans; and the rising cost of materials.

Defendant challenges the decision on the reconsideration motion and reiterates that the judge's finding the arbitrator overlooked the CFA and HIPR is belied by the fact the arbitrator found an ascertainable loss. It also claims the judge changed his reasoning when he invalidated the award on grounds of both undue means and the arbitrator exceeding his powers.

On the cross-appeal, plaintiffs argue the arbitration award should also have been vacated because it contravened public policy interests and the arbitrator exceeded his powers. They claim the CFA and HIPR are meant to hold contractors and sellers responsible for violations, and it would be contrary to public policy to shift the burden under the statute from the contractor to the homeowner. Further, the arbitrator exceeded his powers because the issues

before him were whether plaintiffs breached the contract or defendant violated the CFA and HIPR.

In pertinent part, the New Jersey Arbitration Act provides that an arbitration award may be vacated for the following reasons: "(1) the award was procured by corruption, fraud, or other undue means; . . . (4) an arbitrator exceeded the arbitrator's powers." N.J.S.A. 2A:23B-23. "'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." E. Rutherford, 213 N.J. at 203 (quoting Off. of Emp. Rels. v. Communs. Workers of Am., 154 N.J. 98, 111-12 (1998)).

"[A] court 'may [also] vacate an award if it is contrary to existing law or public policy.'" Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007) (quoting N.J. Tpk. Auth. v. Loc. 196, 190 N.J. 283, 294 (2007)). The public policy exception is narrow. N.J. Tpk. Auth., 190 N.J. at 294. "Public policy is ascertained by 'reference to the laws and legal precedents and not from general considerations of supposed public interests.'" E. Rutherford, 213 N.J. at 202-03 (citing Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 434-35 (1996)). "If the correctness of the award, including its

resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss, 143 N.J. at 443.

A party asserting a claim under the CFA must establish: 1) unlawful conduct by the other party in connection with the sale or advertisement of a product; 2) an ascertainable loss on the part of the party asserting the claim; and 3) a causal relationship between the unlawful conduct and the ascertainable loss. Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 114-15 (App. Div. 2005). "Unlawful conduct" is either an affirmative act, knowing omission, or regulatory violation. See Thiedmann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245 (2005).

The HIPR require that all home improvement contracts exceeding $500 and changes to such contracts "shall be in writing, . . . shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract." N.J.A.C. 13:45A-16.2(a)(12). If a contractor violates this regulation, the first element of the CFA's three-step analysis is satisfied. Roberts v. Cowgill, 316 N.J. Super. 33, 38-40 (App. Div. 1998). To satisfy elements two and three, a consumer-claimant must demonstrate an ascertainable loss caused by the unlawful practice. Id. at 40-41.

12

A-0038-23

Here, the record supports a finding defendant committed CFA and HIPR violations, which caused plaintiffs an ascertainable loss. Indeed, defendant's failure to obtain signed change orders once the nature and costs of the project changed was a violation of HIPR and established the first prong necessary for showing a CFA violation. The record also demonstrates plaintiffs suffered an ascertainable loss, namely, the substantial costs incurred to fix defendant's mistakes and complete the job. This met the second and third prongs under the CFA, because defendant's unlawful conduct caused plaintiffs' losses.

However, the arbitration award was predicated on a misstatement of the law because the arbitrator imposed an additional element on plaintiffs when he concluded they were at fault because they did not engage a third-party contract administration professional. Neither the CFA nor the HIPR require such a step. We are convinced the amount of the award was influenced, if not undercut, by the arbitrator's mistaken interpretation of the law. Indeed, there is no dispute the contract was based on the July 2021 plans. Therefore, the viability of the CFA claim turned on whether defendant prepared change orders when the scope of the project changed. Regardless of whether defendant had the complete plans and drawings prepared in September 2021 before bidding on the project, it certainly had them after it began work and continued with the expanded work

13

without preparing change orders. The obligation to prepare the change orders belonged solely to defendant.

Therefore, the arbitrator's finding that plaintiffs were responsible to retain a third party to convey "the scope, <u>changes</u>, payments and other matters" was contrary to and a misapplication of the law, which affected the award. (Emphasis added). This constituted undue means, and the motion judge correctly overturned the arbitration award for these reasons.

Finally, because we have affirmed the motion judge's order vacating the arbitration award, the aspect of the order denying reconsideration on undue means grounds was also correct and is affirmed as well. For these reasons, we need not reach defendant's argument about whether the judge changed his mind and vacated the award for different reasons on reconsideration. Also, we do not reach the arguments raised on the cross-appeal because we have upheld the ruling vacating the award. We add in closing that in the event the matter is subject to arbitration again, it shall be before a different arbitrator because the arbitrator has already expressed an opinion on this matter, and it should be considered anew by a different fact finder.[2]

---

[2] At oral argument on the appeal, plaintiffs' attorney acknowledged that the new arbitration should extend to all the contested issues, and that the $34,552.80 in ascertainable damages awarded should not be preserved as a minimum recovery.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0038-23